2011 VT 48

# Timothy K. Price v. Town of Fairlee

[26 A.3d 26]

No. 10-125

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed April 29, 2011

Motion for Reargument Denied May 25, 2011

*Timothy K. Price*, Pro Se, Fairlee, Plaintiff-Appellant.

*Frank H. Olmstead* of *DesMeules, Olmstead & Ostler*, Norwich, for Defendant-Appellee.

*William H. Sorrell*, Attorney General, and *Jacob A. Humbert*, Assistant Attorney General, Montpelier, for Appellee-Intervenor State of Vermont.

¶ 1. **Burgess, J.** The question presented is whether, under the Vermont Access to Public Records Act, ballots and tally sheets from the November 2006 election in the Town of Fairlee are open to public inspection. For the reasons set forth below, we conclude that they are. The trial court judgment to the contrary, therefore, is reversed.

¶ 2. The factual and procedural background is as follows. In August 2008, plaintiff, a resident of the Town of Fairlee, filed a pro se complaint in the superior court seeking access to the ballots and tally sheets from the November 2006 election in the possession of the town clerk "before they are in any way tampered with or destroyed." Plaintiff's stated purpose was to determine whether "the vote totals as tabulated are in agreement with the actual ballot count in all the races, and to learn, if possible, how errors may have happened, [and] to verify the integrity of the voting process in Fairlee." In a contemporaneous letter filed with the court, plaintiff explained that the complaint

was prompted by the recount in the 2006 race for State Auditor which revealed that town officials had undercounted eleven votes for one of the candidates. Plaintiff was concerned about the error, and wished to determine whether it was isolated or part of larger pattern for purposes of evaluating the overall performance of the local board of civil authority.

¶ 3. The Town moved to dismiss the complaint, alleging that plaintiff failed to state a claim for which relief could be granted because the time for an election contest or recount had long since passed. See 17 V.S.A. §§ 2602(b), 2683(a) (state and local candidates must file petitions for recount within 10 days of election); *id.* § 2603(a), (c) ("any legal voter" may contest result of election by filing complaint "within 15 days after the election in question, or if there is a recount, within 10 days after the court issues its judgment on the recount"). In conjunction with the Town's motion to dismiss, the State of Vermont, by and through the Office of the Attorney General, moved to intervene in support of the Town's position, stating its view that disclosure of ballots and tally sheets two years after completion of an election was inconsistent with the State's interest in the finality of elections.

¶ 4. The pending motions and plaintiff's request for injunctive relief were heard on November 10, 2008. In the course of the proceeding, the trial court observed that plaintiff's complaint was really in the nature of a request for access to the election materials under the Vermont Access to Public Records Act, 1 V.S.A. §§ 315-320 (PRA). Accordingly, the court ruled that plaintiff should be allowed to file an amended complaint for declaratory relief under the PRA and denied the motion to dismiss. As to plaintiff's request for injunctive relief, however, the court noted that under 17 V.S.A. § 2590(d), the town clerk was required to retain "all ballots and tally sheets . . . for a period of 90 days from the date of the election, after which time they may be destroyed." Because the statute authorized the clerk to destroy the materials after ninety days, the court concluded that there was "no right on the part of a citizen to have access to them" after that time, and as there was "no right" under the statute plaintiff could demonstrate no harm. As the court later explained, it viewed the issue as "whether ballots and tally sheets that remain in the Town Clerk's possession after expiration of the secure [90-day] period are subject to inspection under the Public Records Act . . . *if they have not yet been destroyed*." (Emphasis

added.) Accordingly, plaintiff's request for injunctive relief was denied.

¶ 5. Two days later, on November 12, 2008, plaintiff submitted a request to the Town for disclosure of the election materials under the PRA. The Town's attorney responded by letter indicating that, following the court's denial of the preliminary injunction, the town clerk had indeed destroyed the 2006 ballots and tally sheets "as authorized by law" and that plaintiff's request could not be met "because the documents do not exist." The Town then filed a second motion to dismiss, asserting that the action was moot because the requested materials had been destroyed and were no longer available for disclosure.

¶ 6. In early December 2008, the trial court issued a written decision, denying the motion to dismiss. The court acknowledged that the destruction of the election materials had rendered the case moot, since it could no longer grant the relief requested. It concluded, however, that the case fit within an exception to the mootness doctrine for actions "capable of repetition, yet evading review." In this regard, the court found that the time period between a request for records of this nature and their authorized destruction was "too short for the legal issue to be fully litigated" and that the action was likely to recur, plaintiff having indicated an interest in requesting "access to ballots and tally sheets following future elections" and the Town having expressed no intention of responding any differently. See *In re Vt. State Emps. Ass'n*, 2005 VT 135, ¶ 12, 179 Vt. 578, 893 A.2d 338 (mem.) (restating principle that exception for matters "capable of repetition yet evading review" may apply where challenged action "was in its duration too short to be fully litigated prior to its cessation or expiration" and there is "reasonable expectation that the same complaining party would be subjected to the same action again" (quotation omitted)).[1]

¶ 7. Shortly thereafter, the State moved for summary judgment, asserting that disclosure of the requested materials was prohibited under the "comprehensive statutory framework" governing the conduct of elections in Vermont. Under that scheme, ballots, tally sheets, and other election materials must be "securely sealed" in

---

[1] The Town later moved to amend the court's decision, asserting that there was no basis for its findings relating to the mootness exception, but the court denied the motion.

containers provided by the Secretary of State and returned "to the town clerk, who shall safely store them, and shall not permit them to be removed from his or her custody or tampered with in any way." 17 V.S.A. § 2590(a), (c). Furthermore, as noted, "[e]xcept as otherwise provided by federal law, all ballots and tally sheets shall be retained for a period of 90 days from the date of the election, after which time they may be destroyed; provided, however, that if a court order is entered prior to the expiration of the 90-day period, ordering some different disposition of the ballots, the town clerk shall abide by such order."[2] *Id.* § 2590(d).

¶ 8. The election statutes identify several specific scenarios in which election ballots may be unsealed. If a container "breaks, splits, or opens through handling," the Secretary of State may order the contents moved to new bags. *Id.* § 2590(c). In addition, a court may order a recount of the ballots in two circumstances: first, where the election results are sufficiently close and the "losing candidate" petitions for a recount within ten days of the election, *id.* §§ 2601, 2602(b); and second, where "any legal voter" files a complaint within fifteen days after the election, or within ten days after a court-ordered recount, alleging error or fraud sufficient to change the ultimate result, *id.* § 2603(a)-(c). And, of course, the containers may be unsealed and the ballots and tally sheets "may be destroyed" 90 days after the election. *Id.* § 2590(d).

¶ 9. The election statutes also authorize the public dissemination of certain specific election materials. These include "spoiled" ballots, which after ninety days may be destroyed or "distributed by the town clerk for educational purposes," *id.* § 2568; the "return" or summary sheet showing vote totals, a copy of which shall be made "available to the public upon request," *id.* § 2588(c); and a copy of the entrance or exit "checklist," which must be retained for a period of at least five years from the date of the election and "made available at cost to the public upon request." *Id.* § 2590(e).

¶ 10. Viewing the elections scheme as a whole, the trial court concluded that it effectively excluded the requested ballots from disclosure under two settled PRA exemptions: as "records which by law are designated confidential or by a similar term," 1 V.S.A.

---

[2] Under federal law, records related to elections for federal office must be retained for 22 months. 42 U.S.C. § 1974.

§ 317(c)(1), and as "records which by law may only be disclosed to specifically designated persons," *id.* § 317(c)(2). "Given the care with which the Legislature specifically crafted procedures for the sealing, storage, and transportation of ballots after an election," the court concluded, they qualified as records designated confidential "by law" and accessible only to designated persons.

¶ 11. The court also ventured that "sound public policy reasons" supported a construction "limiting access to sealed ballots only to the enumerated instances permitted in the election statute," to wit, the "overriding need for finality in elections." While acknowledging that plaintiff's intent was not to challenge any specific election result but rather to hold the Town's election officials "to high standards of accountability," the court reasoned that "the incidental effects of studies such as the one plaintiff hopes to undertake could serve to undermine the public's confidence in the validity of the various elections nonetheless." The strict statutory timeframes for election challenges, the court concluded, were imposed "precisely to prevent re-examination of election results months or years after the fact." Accordingly, the court granted the State's motion for summary judgment and dismissed the complaint. This appeal followed.

■ ¶ 12. We emphasize at the outset that our task is to resolve competing statutory constructions, not competing public policies. The latter is the domain of the Legislature, which remains free to amend this or any other statutory scheme to more closely conform to the legislative will. See *Smith v. Parrott*, 2003 VT 64, ¶ 14, 175 Vt. 375, 833 A.2d 843 (holding that resolution of competing "policy concerns" is "more properly left to the Legislature" (quotation omitted)). That said, we approach this particular dispute with the distinct benefit of clear and settled legislative priorities.

■ ¶ 13. In adopting the PRA, the Legislature reaffirmed the fundamental principle of open government that public officials "are trustees and servants of the people and it is in the public interest to enable any person to review and criticize their decisions even though such examination may cause inconvenience or embarrassment." 1 V.S.A. § 315; see *Shlansky v. City of Burlington*, 2010 VT 90, ¶ 12, 188 Vt. 470, 13 A.3d 1075. The PRA thus expresses a strong legislative policy "favoring access to public documents and records," *Wesco, Inc. v. Sorrell*, 2004 VT 102, ¶ 10, 177 Vt. 287, 865 A.2d 350, and its provisions are to be "construed liberally" in

favor of disclosure. *Trombley v. Bellows Falls Union High Sch. Dist. No. 27*, 160 Vt. 101, 106, 624 A.2d 857, 861 (1993). Conversely, we construe the statutory exceptions to the general policy of disclosure "strictly against the custodians of the records and any doubts should be resolved in favor of disclosure." *Id.* at 107, 624 A.2d at 861 (quotation omitted); see also *Finberg v. Murnane*, 159 Vt. 431, 436, 623 A.2d 979, 982 (1992) ("[W]e must construe the exceptions to the Act narrowly to implement the strong policy in favor of disclosure."). "The burden of showing that a record falls within an exception is on the agency seeking to avoid disclosure." *Wesco*, 2004 VT 102, ¶ 10.

■ ¶ 14. The PRA exemption for records designated confidential or the equivalent "by law" is no exception to the general rule of strict construction favoring disclosure. See *Norman v. Vt. Office of Court Adm'r*, 2004 VT 13, ¶ 4, 176 Vt. 593, 844 A.2d 769 (mem.) ("We have made it clear . . . that § 317(c)(1) . . . must be construed narrowly to implement the strong policy in favor of disclosure." (quotation omitted)). Thus, we are bound to construe the electoral scheme on which the State and Town purport to rely as narrowly in favor of public disclosure as its text and evident purposes will allow. With that in mind, there is no support for the broad exception they claim. We find, instead, an exception that can be confined to its narrow statutory purpose of ensuring the integrity of Vermont elections while simultaneously permitting public access once that goal is satisfied.

■ ¶ 15. To be sure, the relatively short statutory timeframes for election challenges are undoubtedly designed to promote "finality." The sealing of election ballots and tally sheets serves a critical function by preserving their integrity and reliability as physical evidence in the event of such a challenge. See, e.g., *Qualkinbush v. Skubisz*, 826 N.E.2d 1181, 1204 (Ill. App. Ct. 2004) (holding that, for ballots to be admissible in election contest, they must have been kept intact with no opportunity for interference); *Ryan v. Montgomery*, 240 N.W.2d 236, 238 (Mich. 1976) ("The evident purpose of the [sealing] precautions prescribed in the statute is to preserve the integrity of the ballots, so that, if necessary to resort to a recount thereof, it may be done with the assurance of having the ballots present the identical verity they bore when cast." (quotation omitted)).

¶ 16. Therefore, had plaintiff or any other interested citizen filed a public-records request seeking access to ballots during the

statutory ninety-day preservation period for an election challenge, we would have no difficulty finding the records to be confidential "by law" under the PRA, and so exempt from disclosure during that period. When that time has run and the election results have been certified, however, the purpose of maintaining the ballots under seal has been fully served, and the confidentiality requirement rendered superfluous. Subsequent disclosure of the ballots and tally sheets can have no effect on the election's outcome or finality.

¶ 17. What the State really appears to be arguing here is that, as the trial court found, subsequent disclosure may undermine "the public's confidence" in an election later revealed to contain errors or discrepancies, and that withholding the ballots therefore serves to preserve electoral "purity" or stability. Yet even if that were the unstated purpose of the election statutes — a conclusion we do not reach today — the PRA's express, overarching goal of ensuring public access "to review and criticize" the performance of our public officials *even though such examination may cause inconvenience or embarrassment*" plainly must take precedence. 1 V.S.A. § 315 (emphasis added).[3]

¶ 18. We are also mindful that the elections statute permits — but does not require — the destruction of ballots and tally sheets after the expiration of the preservation period. 17 V.S.A. § 2590(d) ("[B]allots and tally sheets shall be retained for a period of 90 days from the date of the election, after which time they may be destroyed."). In the absence of a clear statutory provision or purpose requiring that these election materials remain under seal if not destroyed, we are constrained to construe the provision narrowly to permit the disclosure promoted by the PRA. *Finberg*, 159 Vt. at 436, 623 A.2d at 982. We find no contrary intent in the few specific statutes authorizing the unsealing of ballots in certain limited circumstances, such as where a container is damaged, 17 V.S.A. § 2590(c), or in the provisions for disclosure of other election materials, such as "spoiled" ballots, *id.* § 2568. Contrary to the State's claim, this is not a case where two statutory schemes deal with the identical subject matter and we must choose the more "specific" over the "general." *Town of*

---

[3] As world events regularly demonstrate, moreover, secrecy is no guarantee of political stability or public confidence in the integrity of elections or elected officials.

*Brattleboro v. Garfield*, 2006 VT 56, ¶ 10, 180 Vt. 90, 904 A.2d 1157. The PRA and the cases construing it are clear that disclosure is the rule, and that any other statute providing for confidentiality or limited disclosure of records "by law" must be strictly construed in deference to that overriding goal. *Norman*, 2004 VT 13, ¶ 4.

■ ¶ 19. Nor do the several out-of-state decisions cited in the State's brief compel a different conclusion. Each is predicated upon the intersection of elections and public-records laws containing language quite distinct from our own. See, e.g., *In re Decision of State Bd. of Elections v. N.C. State Bd. of Elections*, 570 S.E.2d 897, 898 (N.C. Ct. App. 2002) (denying public records request for ballots in deference to elections statute "unequivocally provid[ing]" that they could be opened only upon written order of elections board or court). Several, moreover, involved public-records requests within the limited timeframe for election challenges, resulting in a holding that the ballots could not be disclosed without directly contravening their integrity and the purpose of the election statutes. See *Smith v. DeKalb Cnty.*, 654 S.E.2d 469, 471-72 (Ga. Ct. App. 2007) (denying public records request for ballot information filed shortly after election under statute requiring that it be kept under seal for at least twenty-four months); *Kibort v. Westrom*, 862 N.E.2d 609, 616 (Ill. App. Ct. 2007) (denying public records request filed shortly after election and observing that "accommodation of plaintiff's inspection request would have required the Commission to unseal the ballots . . . following the tallying and reporting of the votes" and "compromise[d] their integrity so as to render them suspect for purposes of a proceeding to challenge the election"); *State ex rel. Roussel v. St. John the Baptist Parish Sch. Bd.*, 135 So. 2d 665, 668 (La. Ct. App. 1961) (denying public records request for ballots on ground that it would "destroy, or make completely ineffectual, the right given by the election statutes to contest the election"). The case before us is clearly distinguishable; the preservation period for the election in question has expired, the election results are final, and the purpose of maintaining the ballots under seal has been served. No legislative policy evident from the election statutes, whether considered singly or as a whole, is furthered by maintaining their confidentiality.

¶ 20. The practical question of enforcement remains to be considered. As noted, the trial court here denied plaintiff's request

for a preliminary injunction to preserve the ballots from destruction, reasoning that any right to public access was subject to the Town's discretionary authority to destroy them after ninety days. Not surprisingly, that is precisely what occurred.

¶ 21. Under circumstances where a PRA request is pending, however, this destruction must be treated as unauthorized. The PRA establishes a clear and orderly process for the handling of PRA requests, and we discern no basis to exempt this or any similar request from its provisions. Under this procedure, if the custodian "considers the record to be exempt from inspection" the custodian must "so certify in writing" and notify the person making the request of the right to appeal to the "head of the agency" from the adverse determination. 1 V.S.A. § 318(a)(2). If the denial is upheld, the agency must then notify the person making the request of the provisions for judicial review under the PRA. *Id.* § 318(a)(3). This orderly process would be circumvented, and the citizen's right to access defeated, if § 2590(d) of the election statutes were applied to allow the custodian to unilaterally destroy the requested ballots and tally sheets even when an access request remains pending. While the custodian may have a good faith belief that the records may be destroyed in reliance upon the elections statute, nevertheless this is precisely the sort of legal conclusion that the PRA review process was established to determine. See *Munson v. City of S. Burlington*, 162 Vt. 506, 509-10, 648 A.2d 867, 869-70 (1994) (reaffirming principle that statutes which overlap should be construed, where possible, to harmonize their provisions in order to effectuate legislative intent and avoid absurd results). Accordingly, we hold that the discretionary authority to destroy ballots and tally sheets after the preservation period has expired under 17 V.S.A. § 2590(d) must be stayed when a public-records request for the material is filed pursuant to 1 V.S.A. § 318, and the stay must remain in effect until the request is resolved.

¶ 22. Contrary to the opinion of our dissenting colleague, this result is not "made up," *post*, ¶ 27, but is necessarily compelled upon reconciling the two competing legislative schemes: one establishing the goal of open government with an express requirement that its provisions be "liberally" construed to that end, 1 V.S.A. § 315, and the other seeming to authorize a purposeless destruction of public records in frustration of that goal. Nor, contrary to the dissent, does our holding brand the town clerk a

criminal or subject her to penalties for unauthorized destruction of public records under 1 V.S.A. § 320(b). Obviously, the clerk's actions preceded our instant holding and followed the trial court's denial of an injunction to prevent the records' destruction. See *State v. LaBounty*, 2005 VT 124, ¶ 4, 179 Vt. 199, 892 A.2d 203 (noting that defendant's right to adequate notice of what conduct may give rise to criminal punishment requires "rule of lenity" in which any statutory ambiguity must be resolved in favor of accused). Further, while the dissent is correct that the records no longer exist in this case and so are practically unavailable as contemplated by 1 V.S.A. § 318(a)(4), we do not subscribe to the suggested corollary that destruction of ballots in the face of the next PRA request must trump access, as it would perpetually beg the question of whether access to ballots requested under the PRA can ever be realized before their destruction.[4] Absent either an evident reason or a direct expression of such intent, we do not understand that the Legislature meant to defeat the PRA in regard to ballots, so the clerk's statutory discretion to destroy them must yield to a PRA request until otherwise ordered by the superior court.

¶ 23. Finally we consider whether the trial court erred in denying the Town's motion to dismiss the complaint as moot. Normally this is an issue we would address at the outset, but the State itself briefed the claim last and expressly declined to assert it at oral argument. The State's diffidence notwithstanding, however, we are bound to examine any subject potentially affecting

---

[4] Under the dissent's analysis the demand for access would never, except as described below, be ripe for enforcement since the ballots would generally be "in storage" during the preservation period and therefore not immediately accessible under 1 V.S.A. § 318(a)(1) (excepting from immediate inspection a public record "in storage and therefore not available") but still subject to purposeless destruction afterwards. In the event a town denies access, fails to respond "promptly" as directed by 1 V.S.A. § 318(a), or even purports to agree to post-preservation access, the dissent would apparently leave the applicant to obtain, before the preservation period expires, a court order based on a right to access under the PRA and the lack of any town obligation to preserve ballots after ninety days, to prevent destruction of the ballots. See 17 V.S.A. § 2590(d) ("[I]f a court order is entered prior to the expiration of the 90-day period, ordering some different disposition of the ballots, the town clerk shall abide by such order."). Such a procedure is not only cumbersome and costly, but is incompatible with the competing legislative mandate for "free and open examination" of public records not explicitly excluded from disclosure. 1 V.S.A. §§ 315, 317.

the Court's jurisdiction. See *In re Keystone Dev. Corp.*, 2009 VT 13, ¶ 7, 186 Vt. 523, 973 A.2d 1179 (mem.) (observing that a decision that "would not resolve a live controversy" would "exceed our jurisdiction").

■ ■ ¶ 24. There is no basis to disturb the trial court's ruling. As noted, the trial court found — despite the destruction of the ballots — that the case qualified for consideration under the settled exception for cases "capable of repetition yet evading review." To meet this exception, two criteria must be satisfied: the challenged action must be in its duration too short to be fully litigated prior to its cessation or expiration, and there must be a reasonable expectation that the same complaining party will be subjected to the same action again. *State v. Tallman*, 148 Vt. 465, 469, 537 A.2d 422, 424 (1987). In the instant case, the destruction of the ballots meant that the action to be challenged was a fait accompli, and its duration was over before the issue could be joined in court.

¶ 25. As to the second criterion, the State has not challenged the trial court's findings that plaintiff will likely continue to request access to the Town's past election ballots based on his "continuing interest" in evaluating the performance of the Town's election officials and that the Town's response will likely be the same. These findings are not undermined by the State's claim that, since the Town's conversion to electronic scanning machines to read and tally ballots, "human error" is less likely to occur in the future. Indeed, it is precisely to test such assertions that this action was filed.

¶ 26. The trial court was correct to entertain plaintiff's petition, but erred in ruling that the records requested were exempt from disclosure under the PRA and erred in granting summary judgment in favor of the Town and State.

*The judgment is reversed.*

¶ 27. **Dooley, J.,** dissenting. This is an example of creating a right where the governing statute does not provide for it. The right the majority has created is logical for the reasons it states. I agree that it would be good public policy. I cannot agree that we can make it up. Moreover, because the necessary result of the majority's decision is to make the conduct of the town clerk a crime, I think we must proceed very cautiously.

¶ 28. As the majority acknowledges, 17 V.S.A. § 2590(d) authorizes the town clerk to destroy the ballots. It specifically contains an exception that could have applied here — that is, at any time during the period of 90 days after the election, the court could order a different disposition of the ballots. The different disposition is not restricted in the statute; it could have included an examination of the ballots by plaintiff. Of course, plaintiff had to ask for that disposition sufficiently quickly after the election to allow the court to act in the 90-day period, and he failed to do so. The majority calls the procedure under § 2590(d) "cumbersome and costly," *ante*, ¶ 22 n.4, but it is the procedure that the Legislature explicitly created, unlike the procedure created by the majority.

¶ 29. The situation here is virtually unique because there is a statutory authorization to destroy a public record.[5] Through 1 V.S.A. § 317a, Vermont provides that the custodian of a public record shall not destroy it "unless specifically authorized by law." This is the only section of the Vermont Access to Public Records Act (PRA) that deals directly with the destruction of a public record.

¶ 30. Willful destruction of a public record without authority is a crime. *Id.* § 320(c). In this case, there is an authorization by law, so a town clerk cannot be charged criminally for destroying the ballots pursuant to 17 V.S.A. § 2590(d).

¶ 31. The majority holds, however, that there is an exception to the authorization when a public records request has been made for the record. Section 317a of the PRA does not provide such an exception, and it is the only section that deals directly with record destruction. Such an exception is not stated anywhere else in the PRA. Instead, the majority infers the exception because the "orderly process" of citizen access "would be circumvented." *Ante*, ¶ 21. I emphasize that the majority infers such an exception because it is not stated anywhere in the statute, even though the authorization to destroy the record is stated explicitly. This is an implementation choice the Legislature could have made but did

---

[5] The majority labels the authorization as "purposeless." *Ante*, ¶ 22 n.4. The statute serves the obvious purpose of bringing finality to elections. As I said in the beginning of this dissent, if the choice for us were between competing policies, I would vote with the majority. But the choice among competing policies belongs to the Legislature, not to this Court.

not. Even though I agree that the result is good policy, the choice is not for us but for the Legislature.

¶ 32. I also emphasize that in reaching its conclusion that the Town has circumvented the orderly process of citizen access, the majority is selective in describing the "orderly process." The statutes it cites all deal with existing public records and access to them. We are dealing here with records that do not exist. In that circumstance, subsection 318(a)(4) of the PRA says that "if a record does not exist, the custodian shall certify in writing that the record does not exist," and that certification becomes the extent of the custodian's obligation under the statute. Subsection 318(a)(4) obviously trumps procedures cited in the majority opinion that are all based on access to records that actually exist.

¶ 33. In this case, the Town followed the letter of the law even as explained by the majority. By the time that plaintiff filed an access to public records request with the Town, the Town responded that there were no records that met the request. Subsection 318(a)(4) authorizes exactly that response.

¶ 34. The only possible remedy in this case is criminal prosecution of the town clerk under 1 V.S.A. § 320(c). I reiterate that we should be cautious in construing a statute to expand the risk of criminal liability with no description of the scope beyond that in an opinion of this Court. There are obvious questions about the scope of a Court-created exception to the authorization to destroy the ballots that can be answered only over time, leaving town officials in a state of uncertainty. This is exactly why the exception the Court has created should instead be created, if at all, by the Legislature, which can define its scope.

¶ 35. This opinion comes out during a legislative session in which the Legislature is considering amendments to the PRA. Whatever the outcome of this case, I hope the Legislature will consider the issues confronting us and specifically amend the language of the statutes to more clearly define the interrelationship between the right of public access and the authorization to destroy public records, where it exists.

¶ 36. Reluctantly, I must dissent from this Court's decision that the Town of Fairlee violated the PRA as it currently exists.