McMullen v. Comm. for Justice & Fairness, No. 1246-10-12 Cncv (Mello, J., Jan. 28, 2013)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| Chittenden Unit | Docket No. 1246-10-12 Cncv |

Jack McMullen
     Petitioner

    v.

Committee for Justice and Fairness
     Respondent

### DECISION ON PETITION FOR DETERMINATION

Jack McMullen petitions this court to determine that the Committee for Justice and Fairness (CJF) made "related campaign expenditures" in the form of television and direct mail advertisements on behalf of McMullen's opponent William Sorrell during the 2012 Democratic primary campaign for Vermont Attorney General. If this court determines that CJF's expenditures were "related campaign expenditures," then both CJF and Sorrell could be subject to civil penalties in a separate action for violating Vermont's campaign contribution and reporting laws. McMullen is represented by Paul Gillies, Esq. CJF is represented by Joshua Diamond, Esq. Sorrell is represented by Richard Cassidy, Esq.

### FACTS

The following facts are taken from the parties' statements of undisputed material facts as well as the evidence presented at the January 23, 2013 hearing.

Jack McMullen was the Republican candidate for the office of Vermont Attorney General in the 2012 election. CJF is a political action committee (PAC) based in Washington, D.C. that has received contributions from the Democratic Attorneys General Association. CJF spent $194,080.75 on a television advertisement and direct mail advertisements in support of Democratic candidate William Sorrell shortly before the Vermont primary election in late August. Sorrell is a member of the Democratic Attorneys General Association. Sorrell did not report any contributions to his campaign from CJF.

Former Governor Howard Dean narrated the television advertisement for CJF. The CJF television ad narrated by Dean shows two images of Dean and Sorrell standing side by side in front of a podium. Dean says:

> They sold dishonest mortgages, and illegally foreclosed on peoples' homes. But
> when the big banks tried to get away with it, one man in Vermont held them
> accountable. Attorney General Bill Sorrell cracked down on deceptive bankers
> and won millions in relief for homeowners. He's fought to stop predatory lenders

and protected seniors from scams. I'm proud to call Bill Sorrell my friend, but more proud to call him Vermont's Attorney General.[1]

On July 19, 2012, prior to narrating the advertisement, Dean conducted a joint press conference with Sorrell at Burlington City Hall at which he formally endorsed Sorrell's candidacy. The images of Dean standing with Sorrell used in the television advertisement appear to have been taken at this event. Sorrell served as the Secretary of Administration under Governor Dean from 1992–97. Dean appointed Sorrell to the position of Attorney General in 1997.

In August, apparently after the television advertisement first aired, Dean also narrated a radio advertisement endorsing Sorrell's candidacy. The radio advertisement was paid for by Sorrell's campaign.

McMullen alleges that Dean also consulted with Sorrell and advised him on how to run his campaign prior to narrating the advertisement; advised CJF on how it should spend its money to support Sorrell; and attended fundraising events and a television show with Sorrell. However, McMullen did not offer any admissible evidence to prove these allegations.

McMullen was the only witness at the evidentiary hearing. In support of his claim, he offered CJF's campaign finance disclosure forms, Sorrell's campaign finance contribution report, CJF's television advertisement, and the radio advertisement narrated by Dean and paid for by Sorrell's campaign. No evidence was offered regarding CJF's direct mail advertisements.

ANALYSIS

I.      Whether McMullen May Bring This Action

Ordinarily, campaign finance enforcement actions are brought by the attorney general or a state's attorney. See 17 V.S.A. § 2806a. McMullen claims that complaints about CJF were made to the Attorney General and the Addison County State's Attorney, but neither office decided to investigate or prosecute. Accordingly, he petitioned the court pursuant to 17 V.S.A. § 2809(e) for a determination that CJF violated the law. McMullen appears to be the first candidate to invoke this procedure.

Section 2809(e) states that "[a] candidate may seek a determination that an expenditure is a related expenditure made on behalf of an opposing candidate by filing a petition with the superior court of the county in which either candidate resides." 17 V.S.A. § 2809(e). CJF argues that McMullen does not have standing to sue because he was not Sorrell's opponent at the time of the expenditure. CJF made the allegedly illegal expenditures during the weeks leading up to the Vermont primary election. At that time, T.J. Donovan was Sorrell's direct opponent, not McMullen, because Donovan challenged Sorrell in the Democratic primary race for the Attorney General position.

However, the language of the statute is broad enough to permit McMullen's suit. McMullen was "[a] candidate" and Sorrell was "an opposing candidate" in the 2012 election. It is unlikely that the legislature intended to limit this cause of action only to the candidate who had the most at stake at the time of the expenditure. Although he was not directly involved in the

---

[1] The video is available online at http://www.youtube.com/watch?v=KkEW_-ztNRI.

Democratic primary campaign, McMullen certainly had an interest in any illegal expenditures made on behalf of the winning candidate because they may have influenced the outcome of that race and thus the general election.

Furthermore, although the election has occurred, the court does not believe this case is moot. A determination by this court that CJF made a related campaign expenditure on behalf of Sorrell could lead to civil enforcement actions against both of them under 17 V.S.A. § 2806, and such actions may be brought after the election in which the violation occurred. Thus, there is still a live controversy. Moreover, this action falls under the settled exception for cases "capable of repetition yet evading review." *Price v. Town of Fairlee*, 2011 VT 48, ¶ 24, 190 Vt. 66. Two criteria must be satisfied to meet this exception: "the challenged action must be in its duration too short to be fully litigated prior to its cessation or expiration, and there must be a reasonable expectation that the same complaining party will be subjected to the same action again." *Id*. The first criterion is easily met: the television advertisement was created and aired before McMullen could file suit. With regard to the second criterion, the growing influence of super-PACs means that McMullen could be faced with the same action again should he choose to run for attorney general in 2014. McMullen and the citizens of Vermont have a continuing interest in ensuring that Vermont's campaign finance laws are enforced and that Vermont's attorney general obeys those laws in his own campaigns.

II.      Whether CJF's Expenditures Were Related Campaign Expenditures Under 17 V.S.A. § 2809

McMullen seeks a determination by this court that CJF's expenditures on behalf of Sorrell were "related campaign expenditures," making them subject to Vermont's campaign contribution limits and reporting requirements.

Under the First Amendment, an independent PAC such as CJF has the right to make unlimited expenditures in support of a candidate so long as the expenditures are truly independent—that is, made in "[t]he absence of prearrangement and coordination . . . with the candidate or his agent." *Buckley v. Valeo*, 424 U.S. 1, 47 (1976); see also *Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876, 908–09 (2010). Limits on independent expenditures violate the First Amendment because the burden on core political speech is not justified by the government's interest in preventing corruption and the appearance of corruption. *Buckley*, 424 U.S. at 45.

By contrast, limits on contributions to political candidates are constitutionally permissible because they directly address the danger of quid pro quo arrangements and the appearance of improper influence. *Id*. at 26–27. PAC expenditures that are "controlled or coordinated by the candidate or his campaign" may be limited because they are considered to be contributions rather than expenditures. *Id*. at 46–47; 17 V.S.A. § 2809(a). In Vermont, such coordinated expenditures are called "related campaign expenditures" and are subject to Vermont's $3,000 limit on contributions by political committees to candidates. See 17 V.S.A. § 2805, Editor's Note—2011 (Adj. Sess.).

Under Vermont law, "any expenditure intended to promote the election of a specific candidate . . . if intentionally facilitated by, solicited by or approved by the candidate or the candidate's political committee" is a related campaign expenditure. 17 V.S.A. § 2809(c). This

definition of a related campaign expenditure was upheld as constitutional by the Second Circuit Court of Appeals in *Landell v. Sorrell*, 382 F.3d 91, 145 (2d Cir. 2004) (reversed in part on other grounds by *Randall v. Sorrell*, 548 U.S. 230 (2006)).[2]

In *Landell*, the party challenging the statute argued that the phrase "facilitated by" was vague because it could be interpreted to mean that "any communication about a candidate's views with a third party that then undertakes independent expenditures will qualify as a contribution." *Id*. The court disagreed, holding that § 2809(c) was not unconstitutionally vague so long as it was narrowly construed to require "'prearrangement' or 'coordination' with the candidate." *Id*. (quoting *Fed. Election Comm'n v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 498 (1985)). Under the court's construction, merely sharing routine information about a candidate would not be sufficient to meet the "facilitated by" requirement. *Id*. at 145–46.

Since *Landell*, the Vermont Secretary of State has offered further guidance in identifying related campaign expenditures in an administrative rule, which states in pertinent part:

> For purposes of section 2809(c) . . .
>
> a) A campaign expenditure may be a "related campaign expenditure" even if the candidate or the candidate's political committee did not have a specific intent to make an activity or expense a "related campaign expenditure on a candidate's behalf." However, some knowledge of the fact, or willful blindness toward the fact that the action will be used in connection with an activity or expenditure on the candidate's behalf is necessary.
>
> b) "Intentionally facilitated" means for a candidate or the candidate's political committee to consciously, and not accidentally, have done an action to make the activity or expenditure possible.
>
> c) "Solicited" means for the candidate or the candidate's political committee to appeal or ask directly or by an intermediary or by any other means, procure the activity.
>
> d) "Approved" means for the candidate or the candidate's political committee to have consciously, and not accidentally, taken any prior action or inaction that indicates permission or approval. Simply knowing that an activity or expenditure is taking place does not, alone, constitute approval.

Vt. Sec'y of State, Admin. Rule 2000-1 § 2 (2012), available at http://vermont-elections.org/elections1/2012%20CF%20Guide%204.12.12.pdf. The parties agree that the rule governs this case.

McMullen argues that Governor Dean, acting as an agent of the Sorrell campaign, narrated the television advertisement and consulted with CJF about how and where it should be

---

[2] The Fourth Circuit stated recently that the *Randall* Court found § 2809(c) to be "suspect." *Preston v. Leake*, 660 F.3d 726, 739 (4th Cir. 2011). However, its citations to *Randall* do not support that characterization, and *Randall* did not directly address the constitutionality of § 2809(c).

placed in the Vermont media market. In other words, he argues that the Sorrell campaign, acting through Dean, facilitated, solicited, and approved CJF's expenditures on Sorrell's behalf.

"'Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" *Springfield Hydroelectric Co. v. Copp*, 172 Vt. 311, 317 (2001) (quoting Restatement (Second) of Agency § 1 (1958)). Agency is a question of fact, and the burden of proving an agency relationship is on the party asserting its existence. *Westinghouse Elec. Supply Co. v. B.L. Allen, Inc.*, 138 Vt. 84, 94 (1980). "The fact that one assumes to act for another is not enough to establish an agency." *Scott v. Bradford Nat'l Bank*, 107 Vt. 226, 232 (1935).

Here, McMullen has produced no evidence showing that the Sorrell campaign consented to Dean acting on its behalf or that the Sorrell campaign had any control over Dean's actions in connection with the television advertisement produced by CJF. There is no evidence that Dean was compensated for his actions on Sorrell's behalf, or that confidential information was shared with Dean and CJF in order to create or target the television advertisement. To find an agency relationship would require this court to rely on mere inferences, which it declines to do. Dean assisted CJF to create a television advertisement for a friend and former colleague whose campaign he endorsed, but that does not prove that he was acting as an agent of Sorrell or his campaign. Dean is an experienced politician who won five Vermont elections. He is certainly capable of acting independently to assist CJF with creating a fairly generic positive television advertisement and targeting its use in Vermont markets. The fact that Sorrell paid for the radio advertisement narrated by Dean is suggestive that Sorrell also may have been somehow involved in facilitating the CJF television advertisement narrated by Dean, but it is not evidence that such coordination actually took place.

The evidence presented shows that Dean and Sorrell are friends and that Dean endorsed Sorrell in various media during the 2012 Democratic primary race. However, it does not follow that Dean was an agent of Sorrell's campaign. Nor does this evidence show that Sorrell or his campaign facilitated, solicited, or approved of CJF's advertisement. Indeed, there is no evidence that Sorrell or his campaign even knew about the television advertisement prior to its first airdate.

This case is distinguishable from *State v. Republican Governors Association*, cited by both parties. In that case, the court held that the State had pleaded sufficient facts to avoid dismissal of its claim that Republican gubernatorial candidate Brian Dubie's campaign facilitated expenditures by the Republican Governors Association (RGA) during the November 2010 election. *State v. Republican Govs. Assoc.*, No. 762-12-11 Wncv (Vt. Super. Ct. Sep. 26, 2012) (Crawford, J.). The State alleged that the Dubie campaign used its confidential polling data to inform its campaign decisions, then shared the confidential polling data with the RGA, allowing the RGA to spend its money based on the same confidential information. The court held that, *if proven*, this would amount to facilitation even under the narrower standard defined by the Second Circuit, which held that there must be a showing of prearrangement or coordination to prove that a candidate facilitated an expenditure. *Id.* at 5–6 (citing *Landell v. Sorrell*, 382 F.3d 91, 145 (2d Cir. 2004)). By contrast, this case is well past the motion to dismiss stage and there is no evidence of any confidential information being exchanged. The information and images used in the advertisement would have been available from other sources.

The court notes that the press coverage of the CJF television advertisement, which McMullen submitted with his motion for determination but which was not offered at the evidentiary hearing, contains nothing but denials by Sorrell and Dean that they coordinated on the CJF expenditures or strategized together regarding Sorrell's campaign. According to one article, Dean made suggestions to CJF regarding where they should spend their money on television and direct mail. Even if true, this is the type of routine information that the *Landell* court stated was insufficient to prove coordination. See *Landell*, 382 F.3d at 145–46.

## CONCLUSION

Because McMullen has failed to prove that Dean acted as an agent of the Sorrell campaign, or that Sorrell or his campaign intentionally facilitated, solicited, or approved the CJF expenditures, this court must deny McMullen's petition for a determination and dismiss his petition with prejudice.

SO ORDERED this 28th day of January, 2013.


_____
Robert A. Mello, Superior Judge

6