Filed 07/16/21

VERMONT SUPERIOR COURT
Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-00938

| Vermont Journalism Trust LTD v. VERMONT ATTORNEY GENERAL |
| --- |

# ENTRY REGARDING MOTION

Title: Motion for Summary Judgment; Motion for Summary Judgment; Motion for Summary Judgment Defendants' Motion for Summary Judgment; Intervenor-Defendants' Motion for Summary Judgment and Request for Oral Argument; Plaintiff's Motion for Summary Judgment (Motion: 6; 7; 8)
Filer: Stephen F. Coteus; Ian P. Carleton; Benjamin Daniel Battles
Filed Date: June 22, 2021; June 22, 2021; June 22, 2021

Plaintiff's motion for Summary Judgment Denied, Defendant's motion granted


Cross-Motions for Summary Judgment


This is a public records case in which Plaintiff the Vermont Journalism Trust, which operates the VTDigger.org news website, has sought the production of certain records from Defendant the Vermont Attorney General's Office and Attorney General Thomas Donovan in his official capacity only (collectively, AGO or the State). The disputed records are criminal history records related to the AGO's criminal prosecution of Allen Pigeon and Zachary Pigeon, who have intervened in this case. The various criminal charges against the Pigeons were voluntarily dismissed in the Franklin criminal court prior to trial without prejudice, and those cases subsequently were sealed by that court prior to production by the AGO in response to the Trust's records request. The AGO and the requested records are subject to the Franklin court's sealing order, and thus the AGO has not produced them, prompting the Trust to file this case. The Trust, the AGO, and the Pigeons (jointly represented by the same counsel) each have filed a motion for summary judgment predicated on stipulated undisputed facts addressing the Trust's entitlement to production.


The controversy in this case arises out of the timing of the underlying events. The Pigeons initially were charged by the Franklin County State's Attorney. The AGO took over the prosecutions due

to a conflict of interest. The AGO later determined that it could not prove the charges, which were voluntarily dismissed without prejudice on December 30, 2020. On January 4, 2021, the AGO received a records request from a Vermont Public Radio reporter seeking documents related to the AGO's investigation of the Pigeon cases.[1] On January 19, 2021, Zachary Pigeon filed a motion asking the Franklin criminal court to seal his criminal cases pursuant to 13 V.S.A. § 7603(a)(1)(B). On January 21, 2021, a Trust reporter sought similar records from the AGO. On January 27, Allen Pigeon filed a motion asking the Franklin criminal court to seal his criminal case pursuant to 13 V.S.A. § 7603(a)(1)(B). On the same day, the AGO indicated to the Franklin criminal court that it did not object to sealing any of the criminal cases under 13 V.S.A. § 7603. The Franklin criminal court, presumably with no awareness of the competing public records requests, promptly sealed all three criminal cases on January 28. The AGO had not by then produced the documents in response to either VPR's or the Trust's records request.

The next day, the AGO, through AAG Linda Purdy, sought reconsideration from the Franklin criminal court of the sealing orders for the limited purpose of allowing the AGO to comply with the pending public records requests. The parties represent that the criminal court was not sympathetic and denied reconsideration, indicating that it came too late. The record in this case is silent as to whether anyone ever sought review of that decision. This court's understanding is that the criminal court otherwise did not indicate how it would have dealt with knowledge of an unsatisfied public records request prior to sealing. The AGO represents here, and the court accepts, that it did not realize when it assented to sealing under § 7603 that it was foreclosing production under the Public Records Act (PRA). But for the sealing order, the AGO has always been willing to produce the requested records with certain redactions (not in dispute here). Any delay in production apparently was related to computing and payment of any related fees.

As relevant here, 13 V.S.A. § 7603(a) provides:

(a) Unless either party objects in the interests of justice, the court *shall* issue an order sealing the criminal history record related to the citation or arrest of a person:

(1) within 60 days after the final disposition of the case if:

. . .

(B) the charge is dismissed before trial without prejudice.

13 V.S.A. § 7603(a) (emphasis added). Upon receiving the motions to seal, the criminal court ordered the State to indicate whether it objected within 2 weeks. In theory, the AGO could have produced the requested documents and *then* indicated that it did not object to sealing, or it could have promptly indicated that it did not object but request that the sealing order be delayed to accommodate the

---

[1] The substance of the VPR records request is not before the court.

records request.  The former course would have guaranteed production and thus elevated disclosure over the Pigeons' privacy interests.  The latter course would have left the matter for the criminal court to ponder.

In any event, the actual facts are that the AGO promptly indicated its assent to sealing without having first produced the records and without having notified the criminal court of the records requests (apparently no one else did either), and the criminal court then promptly issued its sealing order prior to production.  There is no evidence that the AGO intentionally attempted to manipulate its conduct or that of the criminal court under either the sealing statute or the PRA to avoid production.

Records which are "designated confidential or by a similar term" or which "may only be disclosed to specifically designated persons" are exempt from production under the PRA.  1 V.S.A. § 317(c)(1), (2).  The records at issue here now have been sealed by court order pursuant to statute and thus are exempt from production under Exemptions 1 and 2 of the PRA.

The Trust argues that *Price v. Town of Fairlee*, 2011 VT 48, 190 Vt. 66, counsels in favor of a different result.  In *Price*, a town resident sought access to the ballots and tally sheets of a 2-year-old election by filing a complaint directly in the trial court.[2]  The Town sought dismissal, arguing that the election statutes at that point foreclosed any recount or election contest.  The State intervened to similarly assert that the election statutes should not be read to permit access two years after the fact.  At a hearing, the trial court construed the claim as seeking access under the PRA and permitted Mr. Price to amend the complaint to that effect.  It denied his motion for a preliminary injunction seeking to prevent the destruction of the requested records, however, noting that 90 days after an election, a town clerk has statutory discretion to destroy ballots and tally sheets.  See 17 V.S.A. § 2590(d) (which still so provides).  Following that ruling, the Fairlee town clerk promptly destroyed the requested records, thwarting Mr. Price's records request.

On appeal, the Vermont Supreme Court explained that, at the time the records had been requested, no statute required the ballots and tally sheets to be sealed or destroyed.  The town clerk could have destroyed them under § 2590(d) after 90 days but had not.  It then held that "In the absence of a clear statutory provision or purpose requiring that these election materials remain under seal if not destroyed, we are constrained to construe the provision narrowly to permit the disclosure promoted by the PRA." *Price*, 2011 VT 48, ¶ 18.  And more specifically, "we hold that the discretionary authority to destroy ballots and tally sheets after the preservation period has expired under 17 V.S.A. § 2590(d) must be stayed when a public-records request for the material is filed pursuant to 1 V.S.A. § 318, and the stay must remain in effect until the request is resolved." *Id*. ¶ 21.

---

[2] The implication in the *Price* decision is that Mr. Price was never required to exhaust his administrative remedies.

In other words, it essentially was an abuse of the otherwise standardless statutory discretion to destroy the ballots and tally sheets with the public records request pending.

*Price* is not analogous to this case. Here, 13 V.S.A. § 7603(a) *required* the Franklin criminal court to seal the criminal history records, and the Pigeons obviously would have had intense and legitimate personal privacy interests in sealing as soon as possible after dismissal of the charges. By contrast, the *Price* Court noted that the statute it was evaluating "[seemed] to authorize a purposeless destruction of public records" in direct conflict with the transparency purpose of the PRA. *Price*, 2011 VT 48, ¶ 18. The privacy interest obviously promoted by § 7603 is by no means similar. Personal privacy does not always prevail under the PRA, but it often is a serious consideration. See, e.g., 1 V.S.A. §§ 315(a), 317(c)(7), (10)–(12).

Moreover, whereas the Town of Fairlee both was the custodian of the requested records—with a straightforward ability to have produced them in compliance with the PRA—and the entity choosing to destroy them instead for no good purpose, here the AGO is the custodian, but the Franklin criminal court is the entity that sealed the records, and it was compelled to do so by statute for a weighty statutory purpose.

To the extent that the Trust wants the court to declare precisely how the AGO must deal with a situation such as this in a future case or to speculate as to how a relevant criminal court ought to deal with a future case featuring a request to seal in competition with public records request, the court declines to do either on the facts of this case. Here, the criminal court in fact sealed the records before they were produced, and they are clearly exempt under the PRA.

To the extent that the Trust argues that *Price* requires any discretion over confidentiality to be exercised in favor of disclosure, and that the criminal court, though required to seal, had discretion as to the timing of sealing, which could have accommodated production, it appears to misunderstand both the posture of this case and *Price*. Any discretion as to the timing of the criminal court's sealing order was a matter for the criminal court. It is not an issue for this court on these facts. Moreover, *Price* merely cited the general standard: "The PRA exemption for records designated confidential or the equivalent 'by law' is no exception to the general rule of strict construction favoring disclosure." *Price*, 2011 VT 48, ¶ 14. That does not mean that a law requiring confidentiality must be interpreted as narrowly as possible at all costs, as the Trust apparently employs it, and the *Price* Court did not so hold. It means such a law should be construed "as narrowly in favor of public disclosure *as its text and evident purposes will allow*." *Id*. (emphasis added). The Court thus found that the election statute could easily be "confined to its narrow statutory purpose of ensuring the integrity of Vermont elections [during the 90-day period] while simultaneously permitting public access once that goal is satisfied." *Id*. No conflict.

That is not clearly the case here at all.  It would at least be within the scope of reasonableness for a criminal judge to interpret the sealing statute, given its text and evident privacy purpose, as prevailing over a competing public records request that would eviscerate that precise statutory purpose.  In any event, this court is not required to resolve that issue on these facts, and it will not attempt to do so.[3]

Order

For the foregoing reasons, Intervenors' and the State's motions for summary judgment are granted.  The Trust's motion for summary judgment is denied.

Robert R. Bent,
Judge

---

[3] The court notes that the sealing statute easily could have been drafted to avoid the race between privacy and transparency, such as by mandating that the sealing would go into effect on a date certain after dismissal rather than at any time up to a date certain.  Given the statute we have, however, the dilemma that prompted this case may well happen again in some form.