Filed 12/02/24

VERMONT SUPERIOR COURT

Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 24-CV-02169

American Civil Liberties Union Foundation of Vermont v. Essex County Sheriff's Dept.

Opinion and Order on Defendant's Motion to Dismiss

This is an unusual public records case. *See* 1 V.S.A. §§ 315–320 (Public Records Act or PRA). Plaintiff, the American Civil Liberties Union Foundation (ACLU), submitted a public records request to Defendant, the Essex County Sheriff's Department (the Department), seeking copies of certain records, the Department possesses responsive records and is ready to give them to the ACLU, but the ACLU has never received those records. The ACLU alleges that the Department has refused to send (by mail or e-mail) the records to it and, instead, has insisted that the ACLU must appear at its Guildhall office in person to take physical possession of the records.[1] There appears no dispute that the ACLU appealed that determination administratively, got no response, and then

---

[1] The parties' pre-suit e-mails, attached to the complaint, discussing the Department's physical presence requirement are ambiguous as to whether the Department intended to force the ACLU to comply with an onsite inspection prior to production of copies or whether it was simply refusing to send copies in the mail. In briefing, the Department clarified that it merely refused to send the records to an offsite location. It did so according to a purported a policy of the Department. At argument, the Department reiterated that the records have been copied and are just waiting for someone to pick them up. Accordingly, the Court will not weigh in on any disputes as to whether the Department has the authority to require inspection prior to copying, to require inspection rather than copying, or to require the requester to make the copies. In the Court's view, there is no controversy in this case as to those issues. *See In re Opinion of the Justs.*, 115 Vt. 524, 529 (1949) ("Organically, courts are not instituted to render advisory opinions."). Nor can the Court see why such issues, should they arise in the future, would not be subject to prompt and effective judicial review at that that time, pursuant to the PRA.

timely filed this action. The Department responded with a Rule 12(b)(6) motion to dismiss for failure to state a claim.

I. Procedural Standard

The Vermont Supreme Court disfavors Rule 12(b)(6) motions to dismiss. "Dismissal under Rule 12(b)(6) is proper only when it is beyond doubt that there exist no facts or circumstances consistent with the complaint that would entitle Plaintiff to relief." *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575, 576 (mem.) (*citing Union Mut. Fire Ins. Co. v. Joerg,* 2003 VT 27, ¶ 4, 175 Vt. 196, 198)). In considering a motion to dismiss, the Court "assume[s] that all factual allegations pleaded in the complaint are true, accept[s] as true all reasonable inferences that may be derived from plaintiff's pleadings, and assume[s] that all contravening assertions in defendant's pleadings are false." *Mahoney v. Tara, LLC*, 2011 VT 3, ¶ 7, 189 Vt. 557, 558–59 (mem.) (internal quotation, brackets, and ellipses omitted).

II. Analysis

According to the Department, it has had a consistent policy requiring that copies of public records will be provided to requesters who are physically present at its Guildhall office, and it does not "transmit" public records by e-mail or mail. In its view, it has the clear legal authority under the PRA to have such a policy, which it views as obviously reasonable; and the ACLU's complaint, therefore, fails to state a claim. The ACLU argues that the Court should deny the Department's motion because the purported policy directly undermines the PRA's purposes, conflicts with its terms and the thrust of the case law, and is not justified by any administrative benefits. The PRA, it argues, allows requesters to elect whether to receive copies in person or remotely.

As an initial matter, the Court confirmed at hearing that the Department's "policy" is an internal operating policy and is not an Administrative Procedures Act (APA)-adopted rule with the force of law. *See* 3 V.S.A. §§ 801(b)(9) ("'Rule' means each agency statement of general applicability that implements, interprets, or prescribes law or policy and that has been adopted in the manner provided by sections 836–844 of this title."), 845(a) ("Rules shall be valid and binding on persons they affect and shall have the force of law unless amended or revised or unless a court of competent jurisdiction determines otherwise. Except as provided by subsections 842(c) and 844(e) of this title, rules shall be prima facie evidence of the proper interpretation of the matter to which they refer.").

The Court further notes that, if the policy exists in a written form, it is not in the record. The precise contours of the policy and its language are not known at this time.

Finally, the complaint is silent as to whether there could be something unique about these records that could account for requiring in-person delivery onsite. The implication in the complaint and the briefing is that there is not and that the policy applies to all public records, but this is nowhere made express. In any event, the positions of the parties are clear: the Department has produced the responsive records, they are in an envelope at the station, and the ACLU is welcome to collect them during regular business hours.

*          *          *

Nothing in the PRA expressly says that a requester seeking copies of records can require the responding agency to send them electronically or through the post office. On the other hand, nothing in the PRA expressly says that an agency may require all

requesters seeking copies of public records to obtain them in-person at the agency's office. This is so even though certain provisions of the PRA plainly contemplate that agencies, in fact, will transmit requested records offsite to requesters. *See, e.g.*, 1 V.S.A. § 316(b) ("The agency may also charge and collect from the person making the request, the costs associated with mailing or transmitting the record by facsimile or other electronic means."). Our Supreme Court has yet to consider the issue.

The Department sees the PRA simply and narrowly. It argues that the only rights requesters have under the PRA are "to inspect" or "to copy" public records. 1 V.S.A. § 316(a). In its view, the duty of the agency is solely to make the requested records "available" for inspection or copying. 1 V.S.A. §§ 316(g), (i), (k) 318(b)(1), (c)(3). Nowhere, it contends, does the PRA expressly require the agency to *send* copied records to anyone, though it can charge if it voluntarily does so. *See* 1 V.S.A. § 316(b) The Department concludes that the duty to make records available implies that requesters generally must be onsite for the inspection or copying.

Even if that conclusion is not mandated from the statutory language, the Department argues that its policy is a reasonable expression of its duty and rulemaking authorities codified at 1 V.S.A. §§ 315(a), 316(j), 317(a)(1). Subsection 316(j) says: "A public agency may make reasonable rules to prevent disruption of operations, to preserve the security of public records or documents, and to protect them from damage." Subsection 317(a)(1) provides: "Public records in general and archival records in particular should be systematically managed to provide ready access to vital information, to promote the efficient and economical operation of government, and to preserve their legal, administrative, and informational value." According to the Department, the policy

plainly serves these purposes, including by ensuring a clear "chain of custody" of the records.[2]

The ACLU counters that the PRA statutes are not so constricted and are better read to mean that agencies' duties are more expansive than just making records available. It points to § 316(b) and its allowance for recoupment by the agency of its mailing costs as evidence of a legislative intent to allow requesters to obtain records through the mail. It also notes that agencies are required to permit inspection during express times, 1 V.S.A. § 316(a), but there are no such times set out for copying, implying that copying does not contemplate that the requester necessarily will be onsite. The ACLU concludes that, if requesters do not have to be onsite to retrieve copies, there must be an obligation on the agency to send the copies to the requester. Moreover, argues the ACLU, the disputed policy does nothing but create an unnecessary hardship for requesters that makes actual access to the public records difficult for many and impossible for some, all undermining the essential purposes of the PRA. 1 V.S.A. § 315.

To the extent that the Department's argument is that it can have its in-person policy because nothing in the PRA expressly says it cannot, the Court disagrees. The general policy of the PRA is set forth expressly at 1 V.S.A. § 315(a): "It is the policy of this subchapter to provide for free and open examination of records consistent with Chapter I, Article 6 of the Vermont Constitution. Officers of government are trustees and servants of the people and it is in the public interest to enable any person to review and criticize their decisions even though such examination may cause inconvenience or

---

[2] The Department has not explained at this stage why the production of a public record needs any chain of custody.

embarrassment." As set forth in *Price v. Town of Fairlee*, 2011 VT 48, ¶ 13, 190 Vt. 66, 72–73 (citations omitted): "The PRA . . . expresses a strong legislative policy 'favoring access to public documents and records,' and its provisions are to be 'construed liberally' in favor of disclosure."

In *Price*, the question became whether the town clerk's statutory discretion to destroy election materials after 90 days could be exercised when the town clerk knew that a person was requesting access to those records, which were not confidential or otherwise exempt from access. Importantly for present purposes, neither the election statutes giving the town clerk that discretion nor the PRA in any way expressly limited the town clerk's authority when a records request was at issue. The Court ruled as follows:

> As noted, the trial court here denied plaintiff's request for a preliminary injunction to preserve the ballots from destruction, reasoning that any right to public access was subject to the Town's discretionary authority to destroy them after ninety days. Not surprisingly, that is precisely what occurred.
>
> Under circumstances where a PRA request is pending, however, this destruction must be treated as unauthorized. The PRA establishes a clear and orderly process for the handling of PRA requests, and we discern no basis to exempt this or any similar request from its provisions. . . . This orderly process would be circumvented, and the citizen's right to access defeated, if § 2590(d) of the election statutes were applied to allow the custodian to unilaterally destroy the requested ballots and tally sheets even when an access request remains pending. While the custodian may have a good faith belief that the records may be destroyed in reliance upon the elections statute, nevertheless this is precisely the sort of legal conclusion that the PRA review process was established to determine. Accordingly, we hold that the discretionary authority to destroy ballots and tally sheets after the preservation period has expired under 17 V.S.A. § 2590(d) must be stayed when a public-records request for the material is filed pursuant to 1 V.S.A. § 318, and the stay must remain in effect until the request is resolved.

*Price*, 2011 VT 48, ¶¶ 20–21, 190 Vt. at 75–76 (citations omitted). *Price* is an example of the Court essentially supplying a procedure that is not express in the statute to avoid the pointless frustration of the purposes of the PRA.

Given *Price* and the laudatory purposes of the PRA, the Court cannot endorse the Department's contention that the only rights persons have under the PRA are the narrow rights to inspect or copy public records.

The Court also, however, cannot agree that the statutory silence as to agencies sending copied records to requesters necessarily means that, as the ACLU put it at the hearing, the "ties goes to the requester."

In the Court's view, the Department has a policy, and the Court must determine whether it complies with the language and spirit of the PRA, especially § 316(j). That provision expressly enables agencies to "make reasonable rules to prevent disruption of operations, to preserve the security of public records or documents, and to protect them from damage."

At this juncture, the procedural posture of this motion comes to the fore. The Court is now merely considering whether the ACLU's complaint states a claim. It is sufficient for present purposes for the Court to conclude that it does. Whatever administrative benefits are intended by the policy, they are neither clearly apparent to the Court, nor so plainly compelling and obviously reasonable that the Court can say the policy is justified under the PRA as a matter of law.

And against the policy, the ACLU has raised significant arguments suggesting that the policy does not serve the statutory purposes of §316(j) and, in fact, works to thwart the overarching goals of the PRA. Indeed, the policy does appear to weigh most

heavily upon persons requesting public records who may be homebound; who may be without access to a vehicle; who may be without the extra funds needed for a trip to the Northeast Kingdom; or who may be living elsewhere temporarily due to work commitments, family emergencies, or military deployments.[3]

The Court cannot decide the merits of the policy in the contextual vacuum of a motion to dismiss. It can only conclude that the ACLU's cause of action challenging the policy states a claim under the PRA.

<u>Conclusion</u>

For the foregoing reasons, the Department's motion to dismiss is denied. An Answer should be filed within 7 business days, and the Court will set a prompt hearing on how best to resolve the issue as framed by the Court in this ruling. The Court encourages counsel to discuss the same in advance of the hearing.

Electronically Signed on November 26, 2024, per V.R.E.F. 9(d)

Timothy B. Tomasi
Superior Court Judge

---

[3] For that reason, the Department's point, made at hearing, that the ACLU has the resources to send someone to Guildhall to get the records is largely beside the point. Of course it does. The claim here, however, is that the policy violates the PRA, and the Court does not vary its interpretation of the law based on the parochial interests or status of the requester. On a similar note, the ACLU does not contend that the Department has applied the policy in a different fashion based on such concerns.