NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 49

No. 2016-019

| | |
|---|---|
| In re Appeal of Dezarae Durkee | Supreme Court |
| | On Appeal from Human Services Board |
| | June Term, 2016 |

Charles Gingo, Chair

Marc D. Nemeth of Law Office of Marc D. Nemeth, PLC, White River Junction, for Petitioner-Appellant.

William H. Sorrell, Attorney General, Montpelier, and Seth A. Steinzor, Assistant Attorney General, Waterbury, for Respondent-Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **REIBER, C.J.** This case requires us to determine whether the Department for Children and Families (DCF) may deny an applicant temporary housing assistance under General Assistance (GA) Rule 2652.3 for having left her housing in response to a notice of termination without cause from her landlord. DCF argues that applicant caused her own loss of housing and therefore is ineligible for assistance, and the Human Services Board upheld this determination. Applicant argues that leaving in response to a notice of termination without cause does not constitute causing her own lack of housing and requests declaratory judgment and damages. We reverse and grant declaratory judgment but conclude that damages are not appropriate relief.

¶ 2.     DCF administers the GA program, which consists of financial aid to provide the necessities of life, including shelter for those in need.  See 33 V.S.A. § 2101(4).  The program does not provide housing directly.   Instead, it provides financial relief toward housing with no presumption that this aid will lead to permanent housing.  See Bouvier v. Wilson, 139 Vt. 494, 501, 431 A.2d 465, 469 (1981).  The DCF Commissioner has authority to establish eligibility standards and regulations for providing relief.  33 V.S.A. §§ 2103(b), 2104(b).  DCF defines GA as "an emergency financial assistance program" for those with needs beyond the capacity of other programs and that "cannot be relieved without [DCF's] intervention."  General Assistance § 2600, Code of Vt. Rules 13-170-260, http://www.lexisnexis.com/hottopics/codeofvtrules [https://perma.cc/Q7TK-EPDL] [hereinafter GA Rules].  33 V.S.A. § 2103(a) requires DCF to distinguish between catastrophic and noncatastrophic situations of need.  Applicants who meet the criteria under the noncatastrophic situation are eligible for twenty-eight days of financial assistance.  See GA Rule 2652.3.

¶ 3.     The facts in this case are undisputed.  Applicant, a single mother, rented a mobile home where she lived with her three children between the ages of four and twelve.  One of applicant's children is on the autism spectrum and received treatment locally.  This child received $776 monthly in Social Security Disability Insurance, which was the household's sole source of income.  At the time, applicant also received food stamps, but did not receive Reach Up financial assistance because she had already received sixty months of assistance and could not meet the work participation requirements to remain in the program. On April 30, 2015, applicant's landlord served applicant with a notice of termination without cause and advised her that the termination would be effective on August 2, 2015.  On August 3, 2015, applicant left the mobile home with her children and stayed the night in a motel near the DCF offices.  Her landlord immediately took the mobile home off the rental market, and the parties agree that applicant could not return. Applicant did not wait for and never received an eviction order from a court.

2

¶ 4. On August 4, 2015, applicant applied to DCF for temporary housing under GA Rule 2652.2, the catastrophic relief program, claiming that she had to leave her housing because it was not safe for her children. DCF asked her to come back with evidence to substantiate her claims. DCF also determined that applicant had other shelter for the evening at the motel and other options for shelter—specifically, her mother and the father of one of her children had each offered temporary shelter for applicant and her family. Because she had already paid for another night at the motel and therefore had other shelter for the evening, DCF denied applicant assistance that same day.

¶ 5. Applicant applied for temporary housing again the next day. She brought no evidence to support her claims that the mobile home was not safe. This time, she also applied under GA Rule 2652.3, the noncatastrophic program designed for "vulnerable persons." DCF denied applicant assistance on the basis that she had voluntarily left her own housing by leaving the mobile home after receiving a notice of termination but before receiving an eviction order from a court. The case worker who met with applicant wrote on her application for assistance, "Notice to quit only—no eviction." There is no dispute that applicant met the other criteria for assistance under this rule.

¶ 6. The day after that, applicant returned to the DCF office with her lawyer, who also had been her landlord's lawyer. Applicant argued that she should not have to wait for an eviction order from a court, and thereby undergo court proceedings, to get assistance under GA Rule 2652.3 once the landlord had formally terminated her tenancy without cause by serving her with a notice of termination. Applicant did not renew her claims of uninhabitability at that time and has not done so since.

¶ 7. The matter came up for expedited hearing on August 12, 2015, before a hearing officer of the Human Services Board. The hearing officer was initially uncomfortable with applicant's attorney representing applicant at the hearing due to potential conflicts of interest. In

3

response, applicant waived any potential conflicts, including her claim of uninhabitability, and proposed to argue only the issue of requiring applicant to undergo a court-ordered eviction in order to get assistance under GA Rule 2652.3. The hearing officer then proceeded with the hearing and ultimately recommended to the Board that DCF's decision be upheld. As the reason for the recommendation, the hearing officer stated that applicant "did not show proof that she could not have remained in her last housing." The hearing officer agreed with DCF that a court-ordered eviction was required for applicant to qualify for assistance under GA Rule 2652.3, writing that "[w]hether or not she had a viable defense," applicant "would have been legally in possession of the premises until the Court acted." Absent a court-ordered eviction, the hearing officer recommended that the Board find that applicant had voluntarily left her housing.

¶ 8. The Board heard applicant's case and accepted the hearing officer's recommendation, upholding DCF's decision to deny temporary assistance under GA Rule 2652.3. The Board found that applicant had not met her burden of showing by a preponderance of the evidence that she met the eligibility requirements for assistance under GA Rule 2652.3. Specifically, the Board found that applicant had caused her own loss of housing by "voluntarily leaving" her previous housing when she left after receiving her landlord's notice of termination.

¶ 9. On appeal, applicant argues that DCF erroneously denied her benefits under GA Rule 2652.3. She contends that her departure from her housing cannot be considered voluntary because she left after receiving a notice of termination without cause. Applicant further argues that DCF's policy would force her into court to contest an eviction action without a valid defense, thus damaging her long-term prospects for finding shelter. DCF argues that this case is moot because under GA Rule 2652.3, applicant could now receive assistance, as more than six months have passed since the day she left her housing. Failing that, DCF argues that its decision rested on a legitimate governmental purpose—prioritizing limited state resources to assist the people who need it most—and that DCF acted within its discretion in denying applicant assistance. We

4

conclude that the case is not moot and that DCF incorrectly interpreted GA Rule 2652.3. We reverse and grant declaratory judgment but conclude that damages are not appropriate relief.

I.

¶ 10. We first address DCF's argument that applicant's case is moot. Here, DCF points to GA Rule 2652.3, which specifies that "[a]pplicant households that have caused their own lack of housing within the past 6 months shall not be eligible for emergency housing." DCF argues that, because more than six months have passed since applicant left her housing, applicant is no longer subject to the statutory disqualification and instead is now eligible for assistance, so her case is no longer live.

¶ 11. The roots of the mootness doctrine in Vermont can be traced to the Vermont Constitution, which "limits the authority of the courts to the determination of actual, live controversies between adverse litigants." Holton v. Dep't of Emp't & Training, 2005 VT 42, ¶ 14, 178 Vt. 147, 878 A.2d 1051. An issue becomes moot once either the issue is no longer "live" or "the parties lack a legally cognizable interest in the outcome." State v. Curry, 2009 VT 89, ¶ 11, 186 Vt. 623, 987 A.2d 265 (mem.). Simply having a live conflict at the beginning of the court process is not enough to avoid mootness; the conflict must remain live through all stages of the court process. See In re P.S., 167 Vt. 63, 67, 702 A.2d 98, 100 (1997) ("The actual controversy must be present at all stages of review, not just when the case was filed."). In other words, to avoid being moot a case must remain in a position where this Court can grant "effective relief." Houston v. Town of Waitsfield, 2007 VT 135, ¶ 5, 183 Vt. 543, 944 A.2d 260 (mem.) (quotation omitted).

¶ 12. We have recognized two exceptions to mootness. The first exception applies "when negative collateral consequences are likely to result from the action being reviewed." In re P.S., 167 Vt. at 67, 702 A.2d at 101. The second exception applies when "the underlying situation is capable of repetition, yet evades review." Id. Applicant argues that she falls under the second exception, which requires that "(1) the challenged action was in its duration too short to be fully

5

litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." Id. at 67-68, 702 A.2d at 101 (quotation omitted). The standard for the "capable of repetition" exception to mootness is person-specific. See id. at 68, 702 A.2d at 101 (considering appellant's personal history and circumstances in applying mootness exception).

¶ 13. Here, the parties do not dispute the fact that applicant meets the first requirement of the exception for capable of repetition but evading review. But DCF argues that applicant does not meet the second requirement; it contends that there is no reasonable expectation that applicant would be subjected to the same action again. We disagree. In light of the uncontested facts that applicant is a single mother on a small income and landlords can decide to cease operating a rental unit for nondiscriminatory reasons, we find it entirely reasonable that applicant could once again be given a valid notice of termination without cause and be forced to choose whether to comply with the notice or to await an inevitable court-ordered eviction. Applicant is living on the fringes of homelessness, and her family's housing situation is tenuous for the foreseeable future. We therefore find that this case meets the criteria of the "capable of repetition" exception to mootness.

¶ 14. In doing so, we find that DCF's citations to two of our previous cases are inapt. First, DCF points to In re P.S., 167 Vt. 63, 702 A.2d 98, where the appellant appealed a family court decision to revoke her order of nonhospitalization and enter a new order of hospitalization. We held that the issue of whether the family court's findings were supported by clear and convincing evidence was moot. Id. at 68, 702 A.2d at 101. In that case, a new fact pattern would lead to new evidence relevant to whether a particular family court decision was made on the basis of clear and convincing evidence. Here, we are faced with a very different type of case, one in which the facts are uncontested and the details do not change the substantive issue of law. Regardless of whether future cases have different fact patterns, there is a reasonable expectation that the legal issue would be the same. Likewise, in In re Unnamed Defendant, the defendant

6

received a six-month deferred sentence for resisting arrest. 2011 VT 25, ¶ 2, 189 Vt. 585, 15 A.3d 1039 (mem.). By the time the case arrived before this Court, the deferred sentence had expired and the trial court had ordered the record of the defendant's sentence expunged. Id. The defendant in that case simply made no argument that he was likely to be charged again with resisting arrest—or any crime, for that matter—so there was no reason to believe that the same situation would occur to the same person. Id. ¶ 4. We therefore find these cases unpersuasive and conclude that the appeal is not moot.

II.

¶ 15. We next address whether DCF properly concluded that applicant voluntarily left her housing under GA Rule 2652.3. Generally, "[w]e defer to an administrative agency's interpretation of its own statutes and rules." Hogan v. Dep't of Soc. & Rehab. Servs., 168 Vt. 615, 617, 727 A.2d 1242, 1244 (1998) (mem.). But we do not defer to that interpretation if there is a "clear and convincing showing to the contrary." See Gasoline Marketers of Vt., Inc. v. Agency of Nat. Res., 169 Vt. 504, 508, 739 A.2d 1230, 1233 (1999).

¶ 16. As in any other case involving statutory construction, we begin by looking at the plain language of the regulation. As previously noted, GA Rule 2652.3 states, "Applicant households that have caused their own loss of housing within the past 6 months shall not be eligible for emergency assistance." GA Rule 2652.3. The rule then provides examples of causing one's own loss of housing, which include "[v]oluntarily leaving one's own housing, excluding constructive eviction as defined in rule 2622." Id. We have defined "voluntarily" and "voluntary" in a variety of contexts. An overriding theme is that for a decision to be voluntary, it must not be prompted by anyone else. See Farnham v. Bombardier, Inc., 161 Vt. 619, 620, 640 A.2d 47, 49 (1994) (mem.) (defining "voluntarily" as "without prompting or suggestion" (quoting Black's Law Dictionary 1277 (5th ed. 1979)); State v. Blair, 118 Vt. 81, 92, 99 A.2d 677, 684 (1953) (finding that party making "voluntary" decision must "act on his own judgment, uninfluenced"); see also

7

Merriam–Webster Online Dictionary, http://www.merriam-webster.com/dictionary/voluntary [https://perma.cc/SR3T-XZBZ] (defining "voluntary" as "done or given because you want to and not because you are forced to; done or given by choice").

¶ 17. In this case, applicant's landlord informed applicant in writing, through the notice of termination, that she was expected to leave her housing by August 2, 2015, or face legal action. There is no evidence that applicant caused her own lack of housing. Instead, her tenancy was terminated with due notice and without cause, and she left at the latest time possible under the notice. DCF's interpretation of "voluntarily leaving one's own housing" to include leaving in response to, and at the end of the time provided in, a notice of termination runs counter to the plain meaning of the words in the regulation.

¶ 18. Our holding is bolstered by the purpose of the GA program. GA is "an emergency financial assistance program" for those with needs beyond the capacity of other programs and which "cannot be relieved without [DCF's] intervention." GA Rule 2600. Here, the facts show that applicant is squarely within the population the GA program was intended to serve. Applicant was dealing with unemployment, single parenthood, and the life-changing event of receiving a notice of termination from her landlord. Further, she and her family specifically qualify as "vulnerable persons" under GA Rule 2652.3 based on her child's disability.

¶ 19. DCF argues that GA Rule 2652.3 is designed to allow DCF to reserve limited GA funds to those families with the greatest need. However, that rule excludes several groups for "causing their own lack of housing." One is the group that DCF says applicant belongs to—those who voluntarily left their own housing—but there are other groups as well. Another refers to applicants who severely damaged their former housing. GA Rule 2621(D). A third refers to those who do not follow the rules of a shelter or similar establishment. GA Rule 2652.3. These examples all involve applicants making choices to forfeit housing to which they otherwise have access—either directly, by leaving when they are entitled to stay, or by taking actions that cause

8

them to forfeit their housing. Leaving at the conclusion of a tenancy following a sufficiently noticed termination without cause, rather than forcing a landlord to seek forcible eviction by court order, is not at all like these other actions. The State should encourage lawful and responsible behavior such as vacating premises at the conclusion of a tenancy, rather than forcing people to go to court without regard to whether they have a valid defense to the termination.

¶ 20. DCF's proposed interpretation, as affirmed by the Board, also erroneously asserts that a tenant has a right to retain possession of the premises after the termination of a tenancy, subject to a court-ordered eviction. Vermont's ejectment statute authorizes a judge to issue a writ of possession when a tenant "holds possession of the demised premises without right after the termination of the lease." 12 V.S.A. § 4851. In suggesting that applicant could remain in possession of the premises until served with a writ of possession, the Board conflated a tenant's potential legal right to continued possession of the premises with the practical reality that the process by which the landlord may enforce its legal rights takes time.

¶ 21. Moreover, DCF's proposed interpretation would force both tenants and landlords into courts and would require courts to subject people to legal action in the form of an eviction notice as a precondition for receiving state benefits. Here, it would force applicant to pursue a legal challenge to a landlord's notice of termination without any good-faith reason to believe that that challenge would—or even should—succeed, since applicant acknowledged that the notice to terminate is valid and comports with all the conditions of the law. An eviction also reflects poorly on a tenant's rental history and can show up on a credit report, and landlords often check potential tenants' rental and credit histories. See, e.g., Champlain Valley Office of Econ. Opportunity Renting in Vermont: Information Handbook for Tenants and Landlords 4 (2008), https://www.cvoeo.org/filelibrary/-file_99.pdf [https://perma.cc/4RZQ-XBPZ]. Therefore, DCF's policy placed applicant in an untenable situation. She could either comply with a lawful termination of tenancy and be denied benefits—guaranteeing her family short-term

9

homelessness—or she could disregard a lawful termination and be evicted—threatening her family with long-term homelessness.

III.

¶ 22.    We finally address what remedies are available.  Applicant requests declaratory judgment and damages for twenty-eight days spent in a hotel, which applicant values at "roughly $1,200," but applicant provides no evidence that she paid that money "out of pocket." Alternatively, applicant "requests that the Court shall order [DCF] to make payment to [applicant] for . . . the full amount of emergency housing assistance benefit that is provided to other similarly situated applicants."  We grant declaratory judgment, but we find that damages are not an appropriate remedy in this case.  The purpose of GA is to provide immediate relief, specifically shelter.  While it is true that GA does not provide shelter directly, but rather provides money to be used for shelter, that does not change the purpose of the program.  Because the time for immediate relief has passed—the parties agree that applicant no longer needs DCF funds for shelter—and because applicant has not provided evidence of the amount, or even the existence, of her damages, we conclude that damages are an inappropriate remedy.

Reversed.

FOR THE COURT:

_____

Chief Justice

10