NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 54

No. 2016-202

| | |
|---|---|
| H. Brooke Paige | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Civil Division |
| | |
| State of Vermont, Secretary of State James Condos, | November Term, 2016 |
| Attorney General William Sorrell, Rafael Edward Cruz | |
| and Marco Antonio Rubio | |

Timothy B. Tomasi, J.

H. Brooke Paige, Pro Se, Washington, and Mario Apuzzo, Jamesburg, New Jersey, for
  Plaintiff-Appellant.

William H. Sorrell, Attorney General, and Todd W. Daloz and Katherine L. Pohl, Assistant
  Attorneys General, Montpelier, for Defendants-Appellees State and Condos.

Gregory D. Cote, Boston, Massachusetts, for Defendant-Appellee Cruz.


PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1. **REIBER, C.J.** In this case, appellant—a Vermont voter and candidate in the state's 2016 presidential primary—challenges whether U.S. Senators Ted Cruz and Marco Rubio are constitutionally qualified to run for President of the United States. The trial court dismissed the suit on the grounds that appellant lacked standing and the court lacked jurisdiction to assess the qualifications of the Senators to run for president. Appellant now appeals both holdings, but we affirm the dismissal for a different reason: the case is now moot.

¶ 2. Appellant's case began on December 9, 2015, when he filed a declaratory judgment action against the State, the Secretary of State, and the Attorney General. This action sought, in relevant part: (1) a declaration of "the precise meaning of the phrase 'natural-born Citizen' "; (2) an order requiring the Secretary of State to determine the qualifications of presidential candidates to serve as president, and (3) an injunction to prohibit the Secretary of State from printing the Vermont presidential primary ballots with the names of allegedly "constitutionally unqualified candidates," including Senators Cruz and Rubio. Appellant argued that if the Secretary of State allowed "one or more unqualified candidates" on the ballot for president, then, "in his capacity as a citizen," appellant would be deprived of "his rights under the Fifth and Fourteenth Amendment[s] to life, liberty, and property without due process of law" and "as a candidate for the office of President" he would "suffer[] the prudential debilities of having to contend with candidates who are not qualified," such as competing for signatures, campaign funds, media coverage, and votes. (Emphases added).

¶ 3. On January 4, 2016, appellant moved for a temporary restraining order to prevent the distribution of the state's presidential primary ballots. On January 12, he amended his complaint to remove the Attorney General as a defendant and to add Senators Cruz and Rubio as defendants. After holding a hearing on this motion on January 15, the court denied the motion because it reasoned that appellant's "concern that only constitutionally qualified candidates appear on the primary ballot is not particular to him"; "[t]he fact that he has professed a desire to be a presidential primary candidate for the Republican party does not increase the nature of the alleged harm"; he did not establish that the inclusion of the Senators on the ballot prevented him from obtaining the required number of signatures or "would thwart his attempt to win the primary as a write-in candidate"; and appellant "has little chance of success on the merits."

¶ 4. The State and the two Senators then filed motions to dismiss the case, and appellant moved to amend his complaint again, largely reiterating his initial complaint and responding to

the motions to dismiss. The day after the primary election—which took place on March 1, 2016—appellant moved for another temporary restraining order to prevent certification of the results, which were split between Ohio Governor John Kasich and now-President Donald Trump. The court denied this request on March 4, and the results were certified on March 10. On May 12, the court finally dismissed the case, reiterating two of its key reasons for denying appellant's two motions for temporary restraining orders before and after the primary election: (1) appellant lacked standing "because he is unable to point to any injury that sets him apart from the public generally" and (2) the court lacked jurisdiction to assess the qualifications of the Senators "because [appellant] is trying to get the judiciary to resolve a matter committed to Congress, a so-called political question."[*]

¶ 5. Appellant now appeals the trial court's two holdings. However, as noted previously, we affirm the dismissal for an entirely different reason. We find that the case is now moot because the election is over—neither Senator won the presidency or even Vermont's primary election—and it would be speculative to address the issues raised by appellant because neither Senator is seeking the presidency. Moreover, no exception to the mootness doctrine applies.

¶ 6. We review the court's dismissal of appellant's case de novo. See Town of Bridgewater v. Dep't of Taxes, 173 Vt. 509, 510, 787 A.2d 1234, 1236 (2001) (mem.) ("We review a trial court's dismissal for lack of subject matter jurisdiction de novo . . . .") (quotation omitted). For this Court to have jurisdiction over an appeal, the appeal must involve an actual controversy arising between adverse litigants who have a legally cognizable interest in the outcome of the case.

---

[*] This Court received both appellant's notice of appeal and the docketing statement on June 15. On July 11, appellant filed a motion for extension of time to file his brief and printed case, and these documents were filed on July 25. After requesting and receiving extensions of time of a week to file their briefs, both the State and Senator Cruz timely filed their briefs on September 2. Appellant requested and was then given extended time to file an oversize reply brief, which he did on October 3. On October 20, appellant filed a letter with the Court with a request for oral argument. Oral argument was set for the next available term and took place on November 30.

See Paige v. State, 2013 VT 105, ¶ 8, 195 Vt. 302, 88 A.3d 1182 ("In order for the Court to rule on substantive issues, an appeal must involve either a live controversy, or the parties must have a legally cognizable interest in the outcome of the case throughout the entire proceeding." (quotations omitted)); Chase v. State, 2008 VT 107, ¶ 11, 184 Vt. 430, 966 A.2d 139 (2008) ("It is well-settled that this Court has jurisdiction to decide only actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction." (quotations omitted)). Otherwise, any opinion issued by this Court would merely be advisory, and would not be within our constitutional authority to render. Doria v. Univ. of Vt., 156 Vt. 114, 117, 589 A.2d 317, 318 (1991) ("Unless an actual or justiciable controversy is present, a declaratory judgment is merely an advisory opinion which we lack the constitutional authority to render.").

¶ 7. A case becomes moot—and this Court loses jurisdiction—when there no longer is an actual controversy or the litigants no longer have a legally cognizable interest in the outcome of the case. See In re S.H., 141 Vt. 278, 280, 448 A.2d 148, 149 (1982) ("The general rule is that a case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.' ") (quoting U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 396 (1980)). Stated another way, a case becomes moot when this Court "can no longer grant effective relief." Paige, 2013 VT 105, ¶ 8 (quotation omitted). Importantly, even if a case was not moot when it was first filed, intervening events since its filing can render it moot. See In re Moriarty, 156 Vt. 160, 163, 588 A.2d 1063, 1064 (1991) ("Even though there was once an actual controversy, a change in the facts can render an issue or entire case moot.").

¶ 8. Here, appellant's case does not present an actual controversy because the election is over. Since appellant filed his initial complaint, both Senator Cruz and Senator Rubio were included on Vermont's presidential primary ballot. But neither Senator earned any delegates from Vermont, neither won the Republican Party's presidential nomination, and neither is currently seeking the presidency. Indeed, the general election is over, and President Trump is now in office.

4

The entire purpose of appellant's case was to prevent the inclusion of the Senators on the primary ballot, and the Court cannot now grant appellant any relief that will undo the inclusion of the Senators on the ballot or overturn the primary or general election results in any way. Although there may have been an actual controversy when appellant's case began, there is none now. See id. at 163, 588 A.2d at 1064.

¶ 9. Moreover, this "change in the facts" due to the passing of time is not the result of any action or lack of action by the trial court, this Court, or the appellees. See id. at 163, 588 A.2d at 1064. The trial court acted seasonably to address appellant's claims, issuing orders within days addressing appellant's motions for temporary restraining orders and dismissing the case just slightly over six months after appellant filed it (and just over two months after the primary). Likewise, this Court scheduled oral argument for November 30, just a little over a month after it received appellant's request for oral argument.

¶ 10. Nevertheless, appellant argues that this issue meets two exceptions to the mootness doctrine: (1) the exception for cases that are capable of repetition but evading review, State v. Condrick, 144 Vt. 362, 363, 477 A.2d 632, 633 (1984) ("A case is not moot when a situation is capable of repetition, yet evades review."), and (2) the exception for negative collateral consequences. In re P.S., 167 Vt. 63, 67, 702 A.2d 98, 101 (1997) ("[A] case is not moot when negative collateral consequences are likely to result from the action being reviewed.").

¶ 11. To meet the first exception—the exception for cases that are capable of repetition but evading review—a plaintiff must satisfy a two-prong test: (1) "the challenged action must be in its duration too short to be fully litigated prior to its cessation or expiration," and (2) "there must be a reasonable expectation that the same complaining party will be subjected to the same action again." Price v. Town of Fairlee, 2011 VT 48, ¶ 6, 190 Vt. 66, 26 A.3d 26. Appellant presents arguments addressing both of these prongs. As to the first prong, he argues that he "did everything

5

that he could to expedite the case in the state court so as to have a decision on his ballot challenge. Despite those efforts, the election has come and passed."

¶ 12.  As to the second prong, appellant recognizes the change in the facts, acknowledging in his brief that "[w]e are beyond the primary election in Vermont."  In response, he re-directs his argument away from the fall 2016 election and toward future elections.  First, he maintains that addressing the issue of whether Senators Cruz and Rubio are constitutionally qualified to appear on future ballots not only would redress his injuries but also would be practical for the public as a whole:

> The Court can give plaintiff a remedy which will redress his injuries, that remedy being a declaration that Cruz and Rubio are not Article II natural born citizens and that the Vermont Secretary of State is not to place their names on the primary or general election ballot <u>in future presidential elections</u>. . . . At this stage, it will not cause the State of Vermont any inconvenience or extra expense for it to follow a judgment of this Court as to whether the names of Cruz or Rubio should be allowed to be printed on future election ballots. Addressing the issue at this early stage will <u>avoid any confusion or interference</u> with the rights of Vermont voters to cast their ballots during future elections.  (Emphasis added)

And later appellant directly argues that the issue is bound to come up again:

> The issue of what is a natural born citizen and the state's role in answering that question as it applies to placing candidates for president on the state election ballots remains even though the election is over . . . <u>this issue just keeps coming up but is never resolved</u> for one reason or another.  (Emphasis added)

¶ 13.  Without assessing the first prong of the test for cases that are capable of repetition but evading review, we determine that appellant is unable to satisfy the second prong—he is unable to show that there is a reasonable expectation that he "will be subjected to the same action again." <u>Id</u>. ¶ 6. Appellant's argument here boils down to mere speculation: "Cruz and Rubio will probably be running for President again in 2020."  While it is true that the Senators may run for president during the next election, appellant must show that it is more than just "theoretically possible" that the situation he currently objects to will repeat itself; rather, he must show a "demonstrated

6

probability" that he will become embroiled again in this same situation. In re Green Mountain Power Corp., 148 Vt. 333, 335, 532 A.2d 582, 584 (1987). But appellant offers nothing to support his speculation—no legal filings by either Senator and no statements by either Senator to the effect that they will run for president in the future.

¶ 14. A decision by this Court regarding the meaning of the phrase "natural born Citizen"—and, ultimately, whether the Senators may run for president in Vermont—cannot be based on mere speculation. Appellant's case is similar to those in which we have found that the capable-of-repetition-but-evading-review exception does not apply. See In re P.S., 167 Vt. at 68, 702 A.2d at 101 (holding that appeal of revocation of nonhospitalization order of mental patient who had later been released under separate order did not meet mootness exception because court's findings regarding first order were specific to month in which they were made and any future revocations would "be based on new fact patterns"); Doria, 156 Vt. at 119-20, 589 A.2d at 319 (finding that mootness exception did not apply in case in which defeated gubernatorial candidate objected to poll conducted by university professor, because candidate did not "show any reasonable expectation that he will be subjected to the same type of political poll" in future elections); see also State v. Gundlah, 160 Vt. 193, 196, 624 A.2d 368, 370 (1993) (holding that no mootness exception applied in journalist's appeal of contempt-of-court conviction for refusing to testify at prosecution of prison escapee who subsequently pleaded no contest, because "[a] repetition of the fact pattern presented seems highly unlikely and certainly does not rise to a reasonable expectation.").

¶ 15. Appellant's case likewise does not meet the second exception to the mootness doctrine, the negative collateral consequences exception. This exception is based on the premise that the Court should still consider a case—even if it no longer involves a live controversy—if the action challenged by the appellant will continue to pose negative consequences for the appellant if it is not addressed. It is a natural extension of the concept that "[t]he central question of all

7

mootness problems is 'whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties.' " All Cycle, Inc. v. Chittenden Solid Waste Dist., 164 Vt. 428, 432, 670 A.2d 800, 803 (1995) (quoting 13A C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3533, at 212 (1984)). For example, we have held that the exception applied in a mental health case in which an involuntary hospitalization order—which had expired—nevertheless could have resulted in "legal disabilities" and "social stigmatization" for the patient past its effective date. See State v. J.S., 174 Vt. 619, 620, 817 A.2d 53, 55-56 (2002) (mem.) ("[D]espite [the] appellant's continued hospitalization under an order for continued treatment, the negative collateral consequences of being initially adjudicated mentally ill and then involuntarily hospitalized may continue to plague [the] appellant with both legal disabilities and social stigmatization.").

¶ 16. However, for the negative collateral consequences exception to apply, the contemplated prospective "impact on the parties" that justifies the exception must be specific to the appellant. See All Cycle, Inc., 164 Vt. at 432, 670 A.2d at 803 (quotation omitted). It may not be a generalized grievance shared widely among the public. Here, appellant's case does not meet the negative collateral consequences exception because the prospective impact of not addressing the issues raised by appellant—in other words, not defining the phrase "natural born citizen" or determining whether Senators Cruz and Rubio may be included on the next presidential primary ballot—would not be specific to appellant. It would be shared widely among the public as a whole. This impact is very different from those potential impacts specific to the parties in mental health cases in which we have found the negative collateral consequences exception to apply. See, e.g., State v. J.S., 174 Vt. at 620, 817 A.2d at 56 (declining to dismiss appeal as moot and considering on its merits appellant's challenge to his expired involuntary hospitalization order because "the negative collateral consequences of being initially adjudicated mentally ill and then involuntarily hospitalized may continue to plague appellant"); Condrick, 144 Vt. at 364, 477 A.2d at 633

8

(holding that criminal defendant's appeal of his commitment order was not moot even though he had already been discharged from custody).

¶ 17. Appellant's case is moot because it no longer involves an actual controversy, appellant no longer has a legally cognizable interest in its outcome, and it does not meet either exception to the mootness doctrine argued by appellant. At this time, any opinion issued by this Court on the issues raised by appellant would merely be advisory, and would not be within our constitutional authority to render. See Doria, 156 Vt. at 117, 589 A.2d at 318. We therefore affirm its dismissal by the trial court.

Affirmed.

FOR THE COURT:

_____

Chief Justice

¶ 18. **ROBINSON, J., concurring in the mandate only.** The majority holds that the "capable of repetition" prong of an exception to the mootness doctrine is not satisfied in this case because the prospect of Senator Marco Rubio or Senator Ted Cruz running for United States President in 2020 is a mere theoretical possibility unsupported by any statements or legal filings by either indicating an intent to run in 2020. Ante, ¶ 13. This holding distorts the applicable legal standard and defies common experience, and I cannot join the Court's reasoning. Because I conclude that this case fails the "evading review" prong of that same exception to the mootness doctrine, I concur in the outcome.

¶ 19. First, the applicable legal standard: In order for a circumstance to qualify as "capable of repetition yet evading review," its reoccurrence need not be certain, or even more likely than not. Instead, we have required only a "reasonable expectation" or a "demonstrated probability" that same fact pattern will arise again. See, e.g., State v. Fernald, 168 Vt. 620, 621,

9

723 A.2d 1145, 1146 (1998) (mem.); In re Green Mountain Power Corp., 148 Vt. 333, 335, 532 A.2d 582, 584 (1987); In re S.H., 141 Vt. 278, 281, 448 A.2d 148, 149-50 (1982).

¶ 20.  Our most recent application of this standard makes it clear that a "reasonable expectation" is a far more relaxed standard than the majority opinion suggests, and is in no way tantamount to "certain," "likely," or even "probable." In re Durkee, 2017 VT 49, ¶ 13, __ Vt. __, __ A.3d __.  In that case, the applicant challenged a decision of the Department for Children and Families disqualifying her from temporary housing assistance on the ground that she had vacated her prior rental premises upon due termination of the lease without cause by the landlord, rather than waiting for her landlord to secure a court order to enforce the termination.  By the time this Court considered the case, applicant's six-month disqualification from the temporary housing benefit on account of her actions had passed.  She argued that we should nevertheless consider the challenge to DCF's policy pursuant to the "capable of repetition yet evading review" exception to the mootness doctrine.

¶ 21.  Even recognizing that the "capable of repetition" factor is evaluated from a person-specific perspective, we concluded that applicant's circumstance was capable of repetition.  We noted the uncontested facts that applicant was a single mother raising three children, one of whom had special needs, on an income of $776/month.  Given these facts, we concluded that it was "entirely reasonable that applicant could once again be given a valid notice of termination without cause and be forced to choose whether to comply with the notice or to await an inevitable court-ordered eviction." Id. ¶ 13.  We reiterated that because applicant was "living on the fringes of homelessness," and "her family's housing situation [was] tenuous for the foreseeable future," the case was capable of repetition.  Even in the absence of any indication that applicant expected that she again would be subject to an eviction without cause, leading her to seek temporary housing benefits from the State, we concluded that the expectation that this circumstance might recur was reasonable enough in that case to support the exception to the mootness doctrine.  This application

10

of the "capable of repetition" prong rests on common sense and reasonable probabilities, not evidence that the potential recurrence is currently planned or intended, or is more likely than not.

¶ 22. Our ordinary framework is consistent with the United States Supreme Court's approach as articulated in Roe v. Wade, 410 U.S. 113, 125 (1973). In that case, Jane Roe challenged state criminal prohibitions that restricted her access to a legal abortion. By the time of the appeal, she was no longer pregnant. In considering whether her challenge was moot, the Court did not attempt a granular assessment of the likelihood that Jane Roe would face an unwanted pregnancy in the future. Instead, it observed the obvious: "Pregnancy often comes more than once to the same woman, and in the general population, if man is to survive, it will always be with us. Pregnancy provides a classic justification for a conclusion of nonmootness. It truly could be 'capable of repetition, yet evading review.' " Id. (quotation omitted). Cf. Paige v. State, 2013 VT 105, ¶ 9, 195 Vt. 302, 88 A.3d 1182 (holding that case challenging President Obama's eligibility to be on the ballot for President of the United States in 2012 election was moot where election had passed and President Obama was constitutionally barred from running for election for another term).

¶ 23. The majority's assertion that the possibility of Senator Rubio or Cruz running for President in 2020 is too speculative to likewise trigger the exception to the mootness doctrine is unmoored from this standard and flies in the face of common experience. Both Senators ran for President in 2016; that they both have presidential aspirations is not news. Both ran substantial campaigns in the 2016 Republican primary. Senator Cruz won eleven states and placed second overall in bound delegates. CNN Delegate Estimate, http://www.cnn.com/election/primaries/parties/republican (last visited May 5, 2017) [https://perma.cc/5XBK-Z2FY]. Senator Rubio won one state, plus the District of Columbia and Puerto Rico, and placed third overall in delegates. Id. The prospect of a Cruz or Rubio Presidential Campaign in 2020 is not just a theoretical possibility pulled from the air. These are two United

States Senators who have previously run for President, who were highly competitive in the 2016 Republican nominating contest, and who would be credible candidates for President in 2020. The notion that it's more reasonable to expect that the applicant in the <u>Durkee</u> case will receive a notice of termination of tenancy without cause from her current or future landlord than to expect that Rubio or Cruz may run for President in 2020 defies common sense. I cannot join in the majority's reasoning on this point.

¶ 24. But, assuming for the sake of discussion only that plaintiff has standing to bring a claim such as this, and that it is justiciable, I am not persuaded that the time frames involved in a challenge like this defy judicial review. The Presidential primary election is held in Vermont on the first Tuesday in March. 17 V.S.A. § 2701. Petitions and statements of nomination for major party candidates are not due to be filed with the Vermont Secretary of State until the first Monday after the first Tuesday of the January preceding the primary election. 17 V.S.A. § 2702. However, the major party primary candidates are typically declared, and begin campaigning in earnest, many months before that. For example, the first Republican Presidential primary debate of the 2016 election took place on August 6, 2015—nearly seven months before the 2016 Vermont Presidential primary election. See John Koblin, Republican Debate Draws 24 Million Viewers, N.Y. Times, Aug. 7, 2015, https://www.nytimes.com/2015/08/08/business/media/republican-debate-draws-24-million-viewers.html [https://perma.cc/3D96-TYRJ]. The major candidates were declared and in the running well before that. This is a much more substantial window of time than a pregnant woman's first trimester, <u>Roe</u>, 410 U.S. at 125, or the days immediately following an eviction when a qualifying individual may need temporary housing assistance, <u>In re Durkee</u>, 2017 VT 49, ¶ 13. Several months is a sufficient window to allow for judicial review.

¶ 25. Vermont's Rules of Civil Procedure allow for expedited timelines both at the trial court and on appeal. See V.R.C.P. 78(a) (noting authority of court to expedite the hearing or conduct of any action); V.R.C.P. 80.11 (establishing procedures and requirements for expedited

actions); V.R.A.P. 2 (allowing Supreme Court to suspend provisions of appellate rule to expedite its decision or for other good cause); Reporter's Notes—1973 Amendment, V.R.A.P. 5 (noting that interlocutory appeals may involve kind of urgency which would justify expedited procedure pursuant to V.R.A.P 2). And even the Supreme Court has shown that it can expedite its review and decision-making when circumstances require. See, e.g., <u>Turner v. Governor</u>, 2017 VT 2, __ Vt. __, __ A.3d __ (resolving time-sensitive challenge to gubernatorial judicial appointment within two weeks of initial filing with the Supreme Court).

¶ 26.    That this case became moot before this Court could decide it was as much a function of appellant's approach to the litigation as the limitations of the judicial process. Appellant's complaint reflects that as early as the spring of 2015, he had concerns that Presidential candidates he believed to be constitutionally unqualified were circulating petitions to be included in the 2016 Vermont Presidential primary. By September 2015, he had committed his concerns to writing in a letter to the Vermont Secretary of State and had received a response. Nevertheless, he did not file his complaint in this case until December 9, 2015, and did not actually file a motion for temporary injunctive relief until January 4, 2016—leaving less than two months' time before the primary election. The trial court held a hearing and issued its order resolving this motion by January 15, 2016—a turnaround of less than two weeks' time. Appellant did not seek interlocutory review of this determination. He sought to amend his complaint several times, including to add Senators Rubio and Cruz as defendants; stipulated to enlargements of time for the parties to complete their briefing on the dismissal motions; and sought permission to file a sur-reply in connection with that briefing. On May 12, the trial court finally resolved the case in response to defendants' motions to dismiss. Had appellant sued Senators Rubio and Cruz from the outset, and had he filed a request for temporary injunctive relief contemporaneous with his complaint, the trial court would likely have resolved this case much more quickly.

13

¶ 27.     The majority's approach renders the applicability of the capable-of-repetition test a crapshoot at best, an exercise in futility at worst.  For these reasons, I concur in the result only.

¶ 28.     I am authorized to state that Justice Eaton joins this concurrence.

_____
Associate Justice