NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 7

No. 24-AP-297

| | |
|---|---|
| Richard McCormack & Tanya Vyhovsky | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Civil Division |
| | |
| Phil Scott & Zoie Saunders | January Term, 2025 |

Robert A. Mello, J. (Ret.)

Jared K. Carter and John L. Franco, Jr., Burlington, for Plaintiffs-Appellants/Cross-Appellees.

Charity Clark, Attorney General, and Jonathan T. Rose, Solicitor General, Sarah E.B. London, Chief Assistant Attorney General, and David Golubock, Assistant Attorney General, Montpelier, for Defendants-Appellees/Cross-Appellants.

PRESENT:  Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1.    **COHEN, J.**   Two state senators filed this declaratory judgment action, arguing that Governor Phil Scott acted outside his authority in appointing Zoie Saunders as Secretary of Education on "an interim, temporary basis" without first obtaining the Vermont Senate's advice and consent.  The trial court rejected their argument on the merits and this appeal and cross-appeal followed.  We take judicial notice of subsequent events that have rendered this case moot.  In November 2024, the Governor appointed Ms. Saunders as Secretary of Education, while the Legislature was not in session.  The Legislature reconvened on January 8, 2025, and the Governor sent Ms. Saunders' nomination to the Vermont Senate for its advice and consent.  This latter appointment superseded the earlier appointment and is plainly consistent with the process for

recess appointments set forth in 3 V.S.A. § 257(b). We dismiss this appeal and cross-appeal as moot.

¶ 2. The record indicates the following. In March 2023, the Secretary of Education position became vacant when Daniel French resigned. The Governor appointed Deputy Secretary Heather Bouchey as interim Secretary of Education. The State Board of Education began vetting candidates for the Secretary position pursuant to 3 V.S.A. § 2702(a). Section 2702(a) provides that "[w]ith the advice and consent of the Senate, the Governor shall appoint a Secretary of Education from among no fewer than three candidates proposed by the State Board of Education," and "[t]he Secretary shall serve at the pleasure of the Governor."

¶ 3. In November 2023, the Board submitted three names to the Governor, including Ms. Saunders. On April 15, 2024, during the legislative session, the Governor appointed Ms. Saunders as Secretary of Education and forwarded her appointment to the Senate for its advice and consent. On April 30, 2024, the Senate voted not to confirm her. The same day, the Governor appointed Ms. Saunders as "interim secretary" until February 28, 2025, and until a "successor is appointed and has qualified." On May 10, 2024, the Legislature adjourned, subject to a June 17, 2024 veto session.

¶ 4. This suit was filed in June 2024. Two senators argued that "there was no provision in 3 V.S.A. §§ 256 or 257 for 'interim' appointments of secretaries of State agencies, including the Secretary of Education, which bypasse[d] the Senate's authority and responsibility to grant or withhold its consent to such appointment."[1] The Governor responded that he had authority under Chapter II, § 20 of the Vermont Constitution to make interim appointments without seeking the Senate's advice and consent.

---

[1] Like the trial court, we refer to defendants collectively as the Governor both for ease of reference and because the thrust of this suit is the senators' assertion that the Governor lacked authority to appoint Ms. Saunders.

2

¶ 5.    As indicated above, on November 26, 2024, during the pendency of these appeals, the Governor again appointed Ms. Saunders as Secretary of Education.  This appointment was made while the Legislature was in recess.  This appointment expires on February 28, 2025 "and until a successor is appointed and has qualified."  The 2025-2026 biennial legislative session began on January 8, 2025, and Ms. Saunders' appointment was forwarded to the Senate for its advice and consent.

¶ 6.    The Governor's appointment power is set forth in Chapter II, § 20 of the Vermont Constitution.  That provision authorizes the Governor "to commission all officers, and also to appoint officers, except where provision is, or shall be, otherwise made by law or this Frame of Government; and . . . supply every vacancy in any office, occasioned by death or otherwise, until the office can be filled in the manner directed by law or this Constitution."

¶ 7.    The senators argued that the Governor's authority over interim appointments was limited by the provisions in 3 V.S.A. §§ 256-257.  Section 256(b) states:

> (b) Notwithstanding any other provision of law, all secretaries of State agencies and all commissioners of State departments shall take office only with the advice and consent of the Senate except in the case of an appointment to fill a vacancy when the General Assembly is not in session in which case the appointee may take office subject to the provisions of section 257 of this title.

Section 257 provides:

> (a) Appointments required to be made pursuant to section 256 of this title in the month of February, with the advice and consent of the Senate, shall be valid if made and confirmed at any time during the then regular biennial session of the General Assembly.  If not made and confirmed in such month of February, the term of office of the person appointed and confirmed thereafter shall extend to and include the day whereon his or her term would expire had he or she been appointed and confirmed in such month of February.

> (b) When a vacancy occurs in an office requiring appointment with the advice and consent of the Senate, an appointment may be made to fill the vacancy.  If the appointment to fill the vacancy is made during any adjournment of the General Assembly the person appointed may validly function in that office during adjournment

3

until the Senate convenes at the next regular, adjourned, or special session and acts upon the appointment submitted forthwith by the Governor; or if the appointment to fill the vacancy is made during any session of the General Assembly, the person appointed may validly function in that office until the Senate shall act upon the appointment submitted forthwith by the Governor. Thereafter the appointee shall continue in office if the Senate consents to the appointment.

According to the senators, the law did not allow for "interim appointments" and the Governor's action nullified their statutory duty to provide advice and consent as required by 3 V.S.A. § 257(b). They further asserted that "since April 30, 2024, the office of Secretary of Education has remained unfilled, that Ms. Saunders has not 'validly functioned' in it, that her actions in it since April 30, 2024 are ultra vires and void," and they sought "to enjoin her from exercis[ing] the duties, authority, and from enjoying the emoluments, of that office."

¶ 8. The Governor moved to dismiss the suit on ripeness, standing, and political-question grounds. On the merits, the Governor argued that he had independent constitutional authority to make interim appointments under Chapter II, § 20 of the Vermont Constitution without the Senate's advice and consent.

¶ 9. The trial court dismissed the suit on the merits in a September 2024 order. As an initial matter, it concluded that the senators had standing, the matter was ripe, and it did not present a nonjusticable political question. On the merits, the court looked to the general appointment authority set forth in Vt. Const. ch. II, § 20. It found that a governor's appointment authority predated the existence of the Senate and the advice-and-consent requirement. It traced the legislative history of the relevant constitutional and statutory provisions. It rejected the senators' position as leading to unreasonable results. The court concluded that §§ 256 and 257 referred exclusively to all regularly appointed permanent secretaries, not interim appointments made under a governor's subsidiary power to "supply every vacancy . . . until" the permanent secretary is in

4

office.  Vt. Const. ch. II, § 20.  It held that §§ 256 and 257 did not address the appointment power exercised in this case.

¶ 10.  The court rejected any suggestion about bad-faith conduct or concerns about serial interim appointments, finding no evidence of that occurring here.  It further rejected the argument that the Governor could not reappoint Ms. Saunders because she was not confirmed during her first appointment.  The court concluded there was no statute so providing.  It noted that, where the Legislature intended a consequence for failure to confirm, it had stated so expressly, and it had not done that here.  The court thus granted the Governor's motion to dismiss.  This appeal and cross-appeal followed.

¶ 11.  On appeal, both parties reiterate the arguments that they raised below with respect to a governor's authority over interim appointments.  In his cross-appeal, the Governor argues that the senators lack standing and that our decision in Turner v. Shumlin, 2017 VT 2, 204 Vt. 78, 163 A.3d 1163, is distinguishable.  Assuming that argument fails, the Governor asks the Court to reexamine Turner and adopt a different standard to evaluate legislator standing.  The Governor also asserts that this case presents a nonjusticiable political question.

¶ 12.  We need not address these questions because intervening events have rendered this appeal moot.  "For this Court to have jurisdiction over an appeal, the appeal must involve an actual controversy arising between adverse litigants who have a legally cognizable interest in the outcome of the case."  Paige v. State, 2017 VT 54, ¶¶ 6, 205 Vt. 287, 171 A.3d 1011.  "A case becomes moot—and this Court loses jurisdiction—when there no longer is an actual controversy or the litigants no longer have a legally cognizable interest in the outcome of the case."  Id. ¶ 7.  As we have recognized, "even if a case was not moot when it was first filed, intervening events since its filing can render it moot."  Id.

¶ 13.  There is no longer an actual controversy over the Governor's authority to appoint Ms. Saunders on April 30, 2024 because that appointment was superseded by an out-of-session

5

appointment consistent with the requirements of 3 V.S.A. § 257(b). A vacancy existed "in an office requiring appointment with the advice and consent of the Senate," and the Governor made an appointment "to fill the vacancy." 3 V.S.A. § 257(b). Because "the appointment to fill the vacancy [was] made during any adjournment of the General Assembly[,] the person appointed [could] validly function in that office during adjournment until the Senate convene[d] at the next regular, adjourned, or special session and act[ed] upon the appointment submitted forthwith by the Governor." Id. There is no real dispute that this process was followed. Notwithstanding the Governor's April 30 time-limited appointment, the permanent position of Secretary of Education remained vacant at the time that the Governor appointed Ms. Saunders to the position in November 2024. The controversy over the April 30 appointment is therefore no longer live.

¶ 14. With respect to the senators' assertion that Ms. Saunders' official acts between April 2024 and November 2024 were ultra vires and void, the senators' counsel appears to have largely conceded at oral argument that they would not pursue such a challenge. Even if that were not the case, counsel failed to provide any legal support for the notion that, if they succeeded on their primary claim, Ms. Saunders' actions during this period must be deemed invalid and void.

¶ 15. The senators characterized their case as a quo warranto action below and argued that Ms. Saunders could not defend herself by claiming to be a "de facto officer." Putting aside other issues with respect to this contention, the senators fail to show that bringing a successful quo warranto action would entitle them to invalidate Ms. Saunders' official actions between April and November 2024. "Quo warranto is a preventative remedy addressed to preventing a continuing exercise of an authority unlawfully asserted rather than to correcting what has already been done under that authority." 65 Am. Jur. 2d Quo Warranto § 2 (2025). It "is a remedy that is essentially adversarial in nature that seeks to remove the challenged officer from a position." Id.; see also Turner, 2017 VT 2, ¶ 5 n.2 (considering quo warranto petition, filed directly with Supreme Court as petition for extraordinary relief, and explaining that "[q]uo warranto, Latin for 'by what

6

authority,' is '[a] common-law writ used to inquire into the authority by which a public office is held or a franchise is claimed.' " (quoting Quo Warranto, Black's Law Dictionary (10th ed. 2014))).[2]

¶ 16. The senators' self-described quo warranto claim has become moot. See People ex rel. Strong v. City of Whittier, 24 P.2d 219, 222 (Cal. Ct. App. 1933) ("The proceeding known as quo warranto is to be exercised only to right an existing wrong and not to try moot questions."). Ms. Saunders is no longer acting under the auspices of her April 30 appointment. There is no relief that this Court can afford to the senators or to the Governor with respect to that appointment because it has been supplanted by the November 2024 appointment, which will be subject to the Senate's advice and consent. Any opinion we offer on the validity of the April 30 appointment would be advisory. We thus do not reach the merits of this issue or consider whether the scope of the Governor's appointment authority presents a political question that this Court should avoid deciding. See Paige, 2017 VT 54, ¶ 6 (recognizing that courts lack constitutional authority to render advisory opinions).

---

[2] The senators asserted below that Ms. Saunders "cannot claim the safe haven of the de facto officer rule." "Under the de facto officer doctrine, long recognized by this Court, an officer coming into possession of his office under the forms of law and assuming to act under a proper commission is a de facto officer whose acts are binding as to third persons, despite some infirmity in the qualifications of the officer." State v. Oren, 160 Vt. 245, 247, 627 A.2d 337, 339 (1993) (citation and alteration omitted). "To prevent the endless confusion and irreparable injuries that would otherwise follow, the doctrine that officers, coming into possession of their offices under the forms of law, and assuming to act under a proper commission, issued by the proper elective or appointing power, are de facto officers, whose acts are binding upon third persons, even though upon quo warranto proceedings their title would be found fatally defective." Fancher v. Stearns, 61 Vt. 616, 617, 18 A. 455, 455 (1889). In other words, the de facto officer rule benefits third parties, and those not duly appointed to an office cannot justify their acts on the ground that they are officers de facto; they must instead "show [their] right to exercise the functions of the office." Cummings v. Clark, 15 Vt. 653, 657-58 (1843); see also Smith & Son v. MacAulay, 109 Vt. 326, 332, 196 A. 281, 284 (1938) ("One exercising such an office cannot justify his acts on the ground that he was a de facto officer, in any suit to which he is a party."). There is no indication that Ms. Saunders was relying on the de facto officer doctrine as a defense in this action and, as stated above, the senators' argument for why Ms. Saunders should be removed has become moot.

7

¶ 17. Counsel for the senators suggested at oral argument that the case was not moot because it is capable of repetition but evading review. See State v. Condrick, 144 Vt. 362, 363, 477 A.2d 632, 633 (1984) ("A case is not moot when a situation is capable of repetition, yet evades review."). To fall within this exception, "a plaintiff must satisfy a two-prong test: (1) the challenged action must be 'in its duration too short to be fully litigated prior to its cessation or expiration,' and (2) there must be a 'reasonable expectation that the same complaining party will be subjected to the same action again.' " Paige, 2017 VT 54, ¶ 11 (quoting Price v. Fairlee, 2011 VT 48, ¶ 6, 190 Vt. 66, 26 A.3d 26). A party "must show that it is more than just 'theoretically possible' that the situation he currently objects to will repeat itself; rather, he must show a 'demonstrated probability' that he will become embroiled again in this same situation." Id. ¶ 13.

¶ 18. The record here does not show that either prong of this test is satisfied. This case was fully litigated below and overtaken by intervening events while the case was on appeal. At this juncture, we can only speculate about how the Senate will vote on Ms. Saunders's nomination and what the Governor might do should her nomination be rejected. There is no "demonstrated probability" that the same situation will occur again. We conclude that this case has become moot, and we therefore dismiss this appeal.

Appeal dismissed.

FOR THE COURT:

_____
Associate Justice

¶ 19. **REIBER, C.J., concurring.** I concur with the Court's determination that intervening events have rendered this appeal moot. But I write separately to provide context to the majority's decision of restraint and to underscore the fundamental principle of checks and balances and the constraints it imposes on all "departments" of our government.

¶ 20. In our constitutional structure—both federal and Vermont—the framers' design sought to guard against tyranny such that no branch could assume unchecked power. As James Madison wrote in the Federalist No. 51, if men were angels no government would be necessary.[3] Therefore, in framing a government, precautions must be taken to ensure government constrains itself.

¶ 21. The courts are an essential part of that system of governmental checks and balances. We often discharge our responsibility, in this regard, through opinions that say what the law is, thus constraining one branch or another. But responsible execution of that power means, at times, we have nothing to say. This restraint derives from the law and, in the present instance, from the judicially imposed limit of mootness, which instructs that we refrain from rendering an opinion where not required.

¶ 22. The principles of "separation of powers" and "checks and balances" are deeply interwoven. The structure of both the U.S. and Vermont Constitutions empower certain branches to perform certain tasks. See U.S. Const. arts. I, II, III; Vt. Const. ch. II, §§ 1-4. As Chapter II, § 5 of the Vermont Constitution explains, "[t]he Legislative, Executive, and Judiciary departments, shall be separate and distinct, so that neither exercise the powers properly belonging to the others."

¶ 23. Separation of powers "does not require an absolute separation of powers among the various departments or branches of government, because, of necessity, there is a certain amount of overlap of the powers exercised by the different branches." Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11, 556 A.2d 103, 105 (1989). In "our constitutional system[,] government is one of

_____

[3] "If angels were to govern men, neither external nor internal controls on government would be necessary. In framing a government which is to be administered by men over men, the great difficulty lies in this: you must first enable the government to control the governed; and in the next place oblige it to control itself. A dependence on the people is, no doubt, the primary control on the government; but experience has taught mankind the necessity of auxiliary precautions." The Federalist No. 51 (James Madison) ("The Structure of Government Must Furnish the Proper Checks and Balances Between the Different Departments").

separate and distinct powers guarded by a series of checks and balances so adjusted as to avoid usurpation of power by any one branch." Hartness v. Black, 95 Vt. 190, 197, 114 A. 44, 47 (1921).

¶ 24. Every law passed by the Legislature is subject to such a check. While the Legislature is assigned "[s]upreme Legislative power," Vt. Const. ch. II, § 2, it is composed of two houses—a Senate and a House of Representatives—each with "like powers in all acts of legislation." Vt. Const. ch. II, § 6. The Senate and House are designed to have "coordinate powers . . . in all matters of legislation, as a more efficient safeguard to deliberate action; and as a check against encroachments by the legislative department upon the prerogatives of the executive." Hartness, 95 Vt. at 197, 114 A. at 47. The Constitution provides that "no bill, resolution, or other thing . . . shall have the effect of . . . law, without the concurrence of the other." Vt. Const. ch. II, § 6.

¶ 25. As an additional check, "[e]very bill which shall have passed the Senate and House of Representatives shall, before it becomes a law, be presented to the Governor." Id. § 11. For each bill so presented, the Governor may approve and sign; return to the Legislature with objections; or not return, with procedures for the bill to become law without the Governor's signature. Id. Thus, while the Governor is assigned "[s]upreme Executive power," id. § 3, this power is constrained in many actions "by law or [the Vermont] Constitution." Id. § 20.

¶ 26. The Judiciary is also integrally linked to the other departments. The Vermont Constitution provides that the judicial power "shall be vested in a unified judicial system." Id. § 4. However, the Constitution authorizes the General Assembly to "from time to time ordain and establish" other subordinate courts. Id. "The Governor, with the advice and consent of the Senate, shall fill" judicial vacancies, with few exceptions. Id. § 32.

¶ 27. Additionally, a variety of "self-imposed judicial limits," such as standing, ripeness, and mootness "help define and limit the role of courts in a democratic society." Hinesburg Sand & Gravel Co. v. State, 166 Vt. 337, 341, 693 A.2d 1045, 1048 (1997); see also In re

10

Constitutionality of House Bill 88, 115 Vt. 524, 529, 64 A.2d 169, 172 (1949) (explaining "[t]he judicial power, as conferred by the Constitution of this State upon this Court, is the same as that given to the Federal Supreme Court by the United States Constitution").  While it is foundational that it is the "duty of the judicial department to say what the law is," Marbury v. Madison, 5 U.S. 137, 177 (1803), the "province of the court is, solely, to decide on the rights of individuals, not to [i]nquire how the executive . . . perform[s] duties in which [it has] a discretion."  Hous. Our Seniors in Vt. Inc. v. Agency of Com. & Cmty. Dev., 2024 VT 12, ¶ 21, __ Vt. __, 315 A.3d 1000 (quoting Marbury, 5 U.S. at 177).

¶ 28.    The overlap among the departments of government can produce tension.  In Bowsher v. Synar, the U.S. Supreme Court explained that the "system of division and separation of powers produces conflicts, confusion, and discordance at times."  478 U.S. 714, 722 (1986).  But, the Court went on, the system "was deliberately so structured to assure full, vigorous, and open debate on the great issues affecting the people and to provide avenues for the operation of checks on the exercise of governmental power."  Id.

¶ 29.    Principles of separation of powers and checks and balances thus necessarily contemplate the interrelated role of each branch and the structured conflicts that the Vermont Constitution establishes: executive action is balanced by the oversight of the representative Legislature; the Legislature's ability to pass laws is inextricably bound to the Governor; and the judiciary is constrained by both other departments, as well as by self-imposed limits of justiciability.  Checks and balances are vital to maintaining a government that is fair, effective, and deliberate.

¶ 30.    I am authorized to state that Justice Waples joins this concurrence.

_____
Chief Justice

11